STEWART, Judge ad hoc.
The plaintiff appellant in her application for rehearing took issue with the following findings of fact in the opinion on the original hearing, viz.:
(a) That the “defendant’s truck- -had traversed half the intersection before plaintiff entered” the intersection.
(b) That the “plaintiff had ample time to observe defendant’s truck and take action to avoid the collision.” ‘ ■ . ' '
(c) That “the corner was not -a blind corner.”
On the first point. First, let us see what the only witnesses,- who saw the collision, had to say, that is, the two drivers? and the helper in defendant’s truck. The plaintiff testified, viz.: “Q. yVhat part of the' truck you were driving was damaged? A. The left corner, the left fender, the front corner, the left, right in front of the truck; the left fender and also the whole front of it.” The plaintiff did not say what part -of the defendant’s truck was damaged, for she testified, “I never even looked.'’ The driver of defendant’s truck, Albert N. Cole, said, “Q. Actually what part of your truck was involved? A. The right front wheel. Q.. What part of her truck was the part that first came in contact with.the right front wheel? A. The left front fender and the light.” Willie Roddy, the helper on defendant’s truck, testified “She hit the wheel. Q. Which wheel? A. The right wheel on the front.” From such undisputed evidence, a finding must be made that the left front corner of plaintiff’s truck collided with the right front corner of defendant’s truck. The plaintiff did not testify the side of the street on which she was driving. The defendant’s driver said, “Q. When you approached and entered the intersection, which side of your street were you on? A. The right-hand sidel Q. At the time of the actual impact, which side of your street were you on? A. The right-hand side.” Willie Roddy, the helper, said “Q. When Mr. Cole approached and entered the intersection, which side of the street was he on?'; A. He was on the right. Q. Just before the collision took place, had he- had time to cut to the left or not? A. He didn’t have time to go nowhere.” As to the location of the vehicles, after the collision, O. R. Riley, the employer of plaintiff, who arrived on the scene, after the collision, testified, which was in accord with all the other witnesses, “Q. When you got to the scene where was the two trucks ? A. My truck was across the road in the ditch, and the other truck was just about three-fourths the- way in the middle of the intersection.” And again, “Q. In what part of the road had the railroad -truck stopped when you got there? A. It was just about three-fourths the *778 way across the road, turning to his left slightly, and about, I would say, four feet from the right hand side of the road Mrs. Flowers was going on.” Therefore, it seems inescapable that, if the right front corner of defendant’s truck collided with the left -front corner of the plaintiff’s truck, and defendant was on his right side of the road, as testified by its driver and his helper, which was corroborated by the location of the defendant’s truck in the center of the road, after having been pushed some in a southerly direction, and the plaintiffs truck, after the collision, passed in front of defendant’s truck which was three-fourths of the way across the intersection, that the defendant’s truck had traversed at least half of the intérsection before plaintiff’s truck entered it.
On the second and third points. Of course, as the defendant traversed half the distance of the intersection before plaintiff entered it, then, of course, plaintiff could have seen by such action that defendant’s driver was not recognizing plaintiff’s right of way. But, in addition, it cannot be said that this was a wholly blind corner. Here is what O. R. Riley said,
“Q. How wide are; those two streets there? A. I imagine around eighteen feet, that is, the black topped part of them.”
“Q. Can you tell us how the house is located in the northeast corner of that intersection? A. Let me get my directions right. Northeast, that would be the house on the left going south, wouldn’t it?
“Q. Yes. A. Yes, sir. It is pretty close to the highway; not over three feet from the fence, and the fence is right against the drainage ditch, and there are three trees sitting in front of this house, with a clearance, I guess, of three or three and a half feet, that is, from the limbs down to the ground. You possibly cannot see around it until you get eight feet of it, I don’t imagine. You might see back fifteen, but I doubt it.”
N. W. Pope, who arrived at the scene after the collision, testified,
“Q. Could you tell us about how wide the surfaced portion of each of those streets was — I mean not counting the shoulders? A. Offhand, that is hard to even estimate what the size of the rest of the streets is. I don’t know the standard size of streets.
“Q. They both appear to you to be the normal width of normal streets? A. Yes.
“Q. Isn’t it true that they both appear to be about the same in width? One was about as wide as the other? A. Yes.”
“Q. Now, the ditch that you mentioned that the Drayton truck jumped — was there a ditch along both Winnebago and Pontiac Streets? A. Yes, sir.” Plaintiff testified,
“Q. About how fast were you going prior to the accident? A. I had drove up in the intersection and was barely moving. I was looking — I was driving very slow.
“Q. Prior to the time you got to the intersection can you tell us about how fast you were travelling? A. Well, I had almost come to a stop, I had shifted into second and I was looking for cars. When I came up to this lot, the vacant lot, there was nothing but weeds. I drove in the intersection a piece and looked to see if I could see any vehicles.”
Herman Watts said,
“Q.' Do you know whether she slowed down-- before she got to the intersection ? A. Yes.
“Q. How do you know? A. I heard her shift the gears.”
Plaintiff said,
“Q. Actually, Mrs. Flowers, you did not see the L, and A. truck at all until the time of the collision, did you? A. That is right.”
“A. I saw it just-as it hit; I just caught a glimpse of the truck as it hit.”
“Q. Could you see along Winnebago to your left? A. Well, really as I pulled out into the intersection I could have, but — .”
“Q. Before you got to the intersection, say when you were thirty or forty feet away from it, could you see into Winnebago? A. Not to my left.
“Q. What obstructed your vision to the left? A. Trees and a house.
*779 “Q. About how close is that house to the road? A. I would say four, five, six feet. I wouldn’t know.
“Q. And the trees you spoke of were they in front of the house? A. Yes.”
From such evidence, it is clear that plaintiff had ample time to observe the actions of defendant’s truck, and take action to avoid the collision. For in addition to the defendant’s truck being visible to plaintiff after it entered the intersection, and before she did, the evidence is convincing that plaintiff could have seen defendant’s truck when she was eight to fifteen feet from the intersection. Such clearly demonstrates that this was not a wholly blind corner.
 In view of the jurisprudence of this State, the fact that plaintiff had the right of way at this intersection, was not authority for her to blindly enter it. In Rottman v. Beverly, 183 La. 947, 165 So. 153, 156, the Supreme Court said: “The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger.” In Jackson v. Cook, 189 La. 860, 181 So. 195, 197, it is said: “ * * * that the duty of those in charge of motor cars and- engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability.”
The case of Van Dyke v. Waguespack, La.App., 198 So. 425, 428, is not in point. There the Court found the facts to be that the two vehicles entered the intersection at the same time, and that the plaintiff’s vehicle “was struck on the left side, at the left door.” Here the transportation truck, though approaching the intersection at “approximately the, same time”, under the statute, as plaintiff’s truck, nevertheless, traversed half of the intersection before plaintiff entered it. And, here, the front part of the left front fender of the plaintiff’s truck collided with the right front wheel of defendant’s truck.
For the reasons assigned the original judgment of this Court is reinstated and the judgment appealed from- accordingly affirmed.
DORE, J., recused.