129 So.2d 240 (1961)
Jack L. RUPLE, Plaintiff-Appellee,
v.
TRAVELERS INDEMNITY COMPANY, Defendant-Appellant.
No. 9452.
Court of Appeal of Louisiana, Second Circuit.
April 12, 1961.
Rehearing Denied May 10, 1961.
*241 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellant.
Meadors, Shaw & Meadors, Homer, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Justice.
Plaintiff instituted this suit for personal injuries, medical expenses, loss of wages, and property damages arising out of an automobile collision on November 8, 1958. Made defendant was Travelers Indemnity Company, the liability insurer of Will Sharp. The latter was the owner and operator of the 1954 Chevrolet automobile which collided with plaintiff's 1948 Ford pick-up truck on the aforesaid date. After trial on the merits, the lower court rendered judgment in favor of plaintiff and against defendant in the amount of $5,732.35, whereupon defendant perfected a suspensive appeal to this court.
The accident occurred at approximately 5:45 o'clock P.M. while both vehicles were traveling in a westerly direction on Louisiana Highway No. 615 about one-half mile west of the corporate limits of Haynesville, Louisiana. Prior to the accident Sharp was traveling at a considerably higher rate of speed than plaintiff, although apparently well within the existing 60 mile per hour speed limit, and, inasmuch as there was no oncoming traffic in sight, he attempted to pass the pick-up truck. Meanwhile, Ruple, who had first seen the Sharp vehicle when it was approximately 125 yards to the rear, had gradually decreased his speed preparatory to the execution of a left-hand turn into his driveway on the south side of the highway. There is considerable conflict in the testimony as to whether plaintiff gave an arm signal of his intention to turn left, and as to whether Sharp sounded his horn before attempting the passing maneuver. At any rate, when plaintiff had executed his turn to the extent that the rear extremity of his truck was some five feet south of the highway center line, he was struck on the left rear bumper by the right front fender of the Sharp vehicle. Prior to impact Sharp had braked his automobile in an effort to avoid the collision, and the investigating trooper found some 45 feet of skid marks left by the Chevrolet. The skid marks were, at their inception, on either side of the center stripe and continued into the left or passing lane.
As a consequence of the collision plaintiff suffered an injury to his back which was diagnosed by Dr. W. P. Gladney of Homer, Louisiana, as a lumbosacral sprain with injury to the muscles and to the ligaments of the vertebrae of his back, but without fracture of the back. Dr. Gladney's diagnosis was predicated upon the presence of involuntary muscle spasms in plaintiff's back as of his examination of plaintiff on the evening of the accident.
Plaintiff's petition avers that defendant's insured was guilty of negligence in driving *242 at an excessive rate of speed under the circumstances; failing to maintain a proper lookout and to observe plaintiff's left turn signal; failing to yield the right-of-way after the turn signal had been properly given; and, driving at night when his eyesight did not meet the minimum standards for reasonably good vision. Damages were prayed for to the extent of defendant's liability under the policy, to-wit: $25,075.
Defendant's answer denied the aforesaid allegations of negligence and, alternatively, averred that Ruple was contributorily negligent in attempting a left-hand turn when the way was not clear for the maneuver to be made in safety; in failing to give timely signal of his intention to turn; and, in failing to maintain a proper lookout and to observe the approach of the Sharp vehicle.
Included in the record of this cause is the testimony of four eyewitnesses to the accident; Will Sharp, his wife who was a passenger in the Sharp vehicle, Jack Ruple, and Ruple's wife, who was standing in the doorway of their home when the collision occurred. Neither the testimony of these witnesses nor that of Trooper Sims substantiates plaintiff's allegations that Sharp was driving at an excessive rate of speed and that Sharp's vision was impaired. Therefore, it seems that the primary issue presented by this appeal is one that has frequently been posed for our consideration, to-wit: whether the circumstances surrounding the collision establish negligence on the part of the overtaking motorist, and if so, whether the left turning motorist was derelict in the execution of his maneuver to the extent that his negligence may be termed a proximate cause of the accident.
Pertinent to our resolution of this cause is an examination of the statutory duties imposed upon overtaking and left turning motorists in this State: LSA-R.S. 32:233 provides in part:
"A. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.
"B. The driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction."
LSA-R.S. 32:234 further states:
"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway."
A motorist desiring to execute a left turn is charged with the following duties:
"Except as otherwise provided in this Section, the driver of a vehicle intending to turn * * * left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left." LSA-R.S. 32:235, subd. B.
"The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety * * * and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement." LSA-R.S. 32:236, subd. A.
Plaintiff's version of the accident, which was corroborated by Mrs. Ruple, was to the effect that he first noticed the Sharp vehicle when it was approximately 125 yards to his rear, and at that time he, Ruple, was some 65 yards from his driveway. He further testified that he took his foot from the gas pedal, extended his arm to indicate his intention *243 to turn, and began decelerating when he was 30 yards from the driveway; that the Sharp vehicle was still a considerable distance to his rear when he looked into his mirror for the last time; and that said last observation was made when Ruple was some 10 to 15 yards from his driveway, at which point he brought his arm in and steered into the left-hand lane preparatory to execution of his turn. We are of the opinion that the testimony, when considered in the light most favorable to plaintiff, establishes negligence on the part of plaintiff as a proximate cause of the accident.
It is the well-settled law and jurisprudence of our state that a person who attempts to make a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain before turning that the turn can be made safely without endangering normal overtaking or on-coming traffic. E. g. Blanchard v. Ashby Construction Co., La.App. 1st Cir., 1957, 95 So.2d 670; Methvin v. Roshto, La.App. 1st Cir., 1957, 96 So.2d 383. The onerous burden placed upon a left turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the instant case, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. Callia v. Rambin, La.App. 2d Cir., 1955, 78 So.2d 44; Nichols v. Everist, La.App. 2d Cir., 1955, 80 So.2d 199. In the last-cited case we made the following observations:
"Nichols, driving his truck south at a speed of 30 to 35 miles per hour, having in mind the intention of executing a left-hand turn into the private driveway of Club Forest, was fully aware of the Everist automobile approaching from the rear at a speed of not less than 60 miles per hour and had observed the said vehicle on two occasions at distances of approximately 300 and 175 feet. There could have been no possible room for question in Nichols' mind as to the fact that a following vehicle, proceeding at twice his own rate of speed on an open highway with no approaching traffic, intended to pass, and it follows as an inescapable consequence that his attempt to make a left-hand turn across the highway under such circumstances was gross negligence." Id. at page 201.
In the instant case, plaintiff admitted seeing Sharp when the latter was 125 yards to the rear, and again when he, Ruple, was 10 to 15 yards from his driveway, at which time Ruple estimated the original 125 yard gap between the two vehicles had been cut approximately in half. Although he was well aware of the overtaking vehicle and realized that its speed was approximately twice that of his own, Ruple attempted to execute a left-hand turn across the straight expanse of clear highway into an unmarked private drive. He failed to resurvey the scene to the rear immediately prior to executing his turn, but instead steered into the left or passing lane while still some 10 to 15 yards from the driveway. Pertinent under these circumstances is the observation made by the court in Service Fire Insurance Company v. Suezy, La.App. 1st Cir., 1954, 77 So.2d 110:
"By his own admission the defendant did not exercise such caution, as, although he knew that the Hartner car was following him, he did not look immediately prior to turning to determine that the way was clear. Regardless of whether or not he had given a hand signal, he knew that there was traffic behind him and yet failed to exercise the caution that the law imposes upon him. By just giving the hand signal Suezy only performed one-half of his duty. He should also have looked to see if the way was clear. If he had looked, he would have seen he could not make the turn safely. This is similar to a motorist who comes to an intersection and stops but falls to look for approaching traffic. He only performs one-half of his duty under the law. This was definitely *244 an act of gross negligence on the part of the defendant and was a proximate cause of the accident, if not the proximate cause of the accident." Id. at page 112. See also Dunnington v. Richard, La.App. 1st Cir., 1955, 81 So.2d 33.
The same reasoning was applied in Jenkins v. Fidelity & Casualty Company of New York, La.App. 1st. Cir., 1957, 92 So.2d 120, wherein a left turning motorist was held contributorily negligent when he made a long angling turn without ascertaining whether his left turn signal was being obeyed, or whether the way was clear.
Finally, the Supreme Court in the case of Johnson v. Wilson, 1960, 239 La. 390, 118 So.2d 450, 453, reversing the decision of the First Circuit in La.App., 97 So.2d 674, held as follows:
"It is seen from the statement of defendant * * * that he felt that, when he had given a hand signal indicating his intention to make a left turn, he was entitled to engage in that maneuver irrespective of the speed of plaintiff's car or the distance of the car from the truck at that time. But, of course, defendant did not have the legal right to commence a left turn by driving over the center line when confronted with an unfavorable traffic condition and, had he checked to his rear, just before turning, he would have realized that the Johnson car was rapidly closing the 300 to 400 foot gap between the car and the truck, which he had previously observed, and prudence would have demanded that he wait until the speeding car either slowed or passed before beginning his angling turn."
In the light of the foregoing authorities it is our opinion that plaintiff's attempted execution of a left-hand turn without first ascertaining that the turn could be made in safety, was a proximate cause of the resulting collision and bars plaintiff's recovery against defendant for acts of negligence allegedly committed by its insured. Under these circumstances our consideration of the evidence supporting Sharp's alleged negligence would be superfluous.
We do not consider our conclusion herein as being inconsistent with the authorities cited in appellee's briefs. Our determination that the record fails to substantiate allegations of Sharp's excessive speed clearly distinguishes this case from that of Green v. Plummer, La.App. 1st Cir., 1960, 119 So.2d 862, wherein the court held an overtaking motorist's excessive speed to be the sole proximate cause of the accident. In Hinton v. Beyl, La.App. 1st Cir., 1960, 122 So.2d 680, the court in its opinion expressly distinguished the situation therein involved, which was a contest between a left turning motorist and an overtaking motorist who was attempting to pass several vehicles in the same maneuver, from cases involving a left turning motorist who is struck by an overtaking vehicle traveling immediately behind the turning vehicle. In each of the above two cases the left turning motorist was absolved from negligence because under the circumstances there was no reason for the turning motorist to anticipate that his maneuver could not be safely completed.
For the reasons assigned, the judgment from which appealed is annulled, reversed and set aside and there is now judgment in defendant's favor, rejecting plaintiff's demands at his costs.