192 So.2d 226 (1966)
John S. RHODUS, Individually and on Behalf of the Minor, Dean A. Rhodus,
v.
ALLSTATE INSURANCE COMPANY et al.
No. 2347.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1966.
Rehearing Denied December 5, 1966.
Writ Refused February 3, 1967.
*227 Wilmer G. Hinrichs, New Orleans, for plaintiffs-appellees.
Curtis R. Boisfontaine, of Sessions, Fishman, Rosenson & Snellings, New Orleans, for defendant-appellant (Allstate Insurance Co.); for defendant-appellee (Aetna Casualty & Surety Co.).
Gordon F. Wilson, Jr., of Hammett, Leake & Hammett, New Orleans, for defendant-appellant (Lumbermens Mutual Casualty Co.).
Before McBRIDE, REGAN and BARNETTE, JJ.
McBRIDE, Judge.
Defendants, Allstate Insurance Company and Lumbermens Mutual Casualty Company, the public liability insurers of two automobiles which were involved in an intersectional collision, appealed from that part of a judgment which casts them in solido for $7000 in damages in favor of John S. Rhodus for and on behalf of his minor son, Dean A. Rhodus, then 15 years of age, who was injured in the accident.
The accident occurred about 4:30 on the wet and rainy afternoon of June 16, 1961, in the intersection of Painters and Carnot Streets, which streets run at right angles; each is narrow being 18 feet wide, black-topped and of equal dignity. The intersection is uncontrolled by traffic signs, lights, or other signals. Linda Dombourian, a minor then 15 years of age, was driving a Ford automobile (which for the purposes of this opinion, we shall call the "Dombourian car") on Painters Street in the direction of the lake; Mrs. Rosalie Alfonso was driving a Ford automobile on Carnot Street in the direction of Canal Street. In other words, the Dombourian car approached the Alfonso car from the latter's left. The vehicles collided in the intersection after the Dombourian car had nearly traversed the same. The testimony shows that the left front of the Alfonso car struck the right rear of the Dombourian automobile knocking same sideways into a fire hydrant. The car came to rest about 30 feet from the point of impact. The Alfonso car remained in the intersection. Dean A. Rhodus, who was riding with another teen-age passenger in the Dombourian car, sustained injuries.
This suit, brought by the father of young Rhodus for and on his behalf, is a direct action against Allstate Insurance Company, the insurer of the Dombourian car, Lumbermens Mutual Casualty Company, who carries the insurance on the Alfonso car, and another insurer.
The composite testimony of the three occupants of the Dombourian vehicle reflects that Linda Dombourian was driving at approximately 15 to 20 miles per hour as she neared the intersection, that she blew her horn and slackened the speed of her car by shifting into second position prior to making entry into the intersection. Miss Dombourian claims she looked for vehicles on Carnot Street but saw none, whereupon she entered the intersection and had almost completed the crossing when her car was struck as aforesaid by the Alfonso car, which she admits she never saw until the *228 moment of the collision. It was testified to by Miss Dombourian and her two young passengers that she was traveling at a very slow rate of speed and that her car was still in second gear when struck. Rhodus was the only occupant of the Dombourian car who claims to have seen the Alfonso vehicle prior to the collision. He stated that when the Dombourian car was "* * across the intersection" he observed the Alfonso car coming from his right on Carnot Street and that it at that time was 20 to 30 feet" removed from the intersection.
Right here and now we must say that this testimony of Rhodus cannot be taken into consideration by the court because of its utter incredibility.
Mrs. Alfonso states that upon nearing the intersection she reduced the speed of her car coming to a virtual stop at the intersection; at one point in her testimony she claims she then looked in both directions on Painters Street and saw no vehicles, but later she states she saw the Dombourian car one-quarter of a block away. She attempted a right turn from Carnot into Painters Street and had just entered the intersection when she heard an automobile horn blown several times which caused her to bring her vehicle to a complete stop with its front end protruding into the intersection. Mrs. Alfonso states the Dombourian car then came "flying in front of me." Mrs. Alfonso's testimony that she saw the other car one-quarter of a block away is just as incredible and unbelievable as that of young Rhodus. It is inconceivable that the Dombourian car traveled a distance of one-quarter of a block in the short space of time consumed by Mrs. Alfonso to barely start the arc of her right turn. We believe Mrs. Alfonso stated the truth when she testified she did not see the Dombourian car at all. This is a case wherein neither driver saw the other vehicle until the moment of the crash, although the respective view of each was unobstructed. Each is positive that she looked down the intersecting street and saw no cars approaching. It is a presumption of law, juris et de jure, that a person saw a thing that he should have seen had he looked, and his failure to see what was there to be seen constitutes negligence. Jackson v. Cook, 189 La. 860, 181 So. 195; Scheib v. Ledet, La.App., 57 So.2d 814; Flowers v. Indemnity Ins. Co., La.App., 46 So.2d 776; Hirsch v. Kendrick, La.App., 43 So.2d 692; Maher v. New Orleans Linen Supply Co., La.App., 41 So. 2d 101.
There is no proof in the record to the effect that either vehicle was speeding and the question of speed is not an issue except insofar as counsel for Allstate Insurance Company, in arguing that whereas the Alfonso car was 20 to 30 feet removed from the intersection when the Dombourian car was almost leaving the intersection infers that the Alfonso car must have been traveling at terrific speed to cause the collision. It is also pointed up that whereas the Alfonso car was 20 to 30 feet away when Rhodus said he saw it the car must have been so far away that Miss Dombourian could not see it when she looked before making entry into the intersection. We have stated that we will not accept the testimony of Rhodus that the Alfonso car was as far from the intersection as he pretended it was so counsel's argument as to the speed of Mrs. Alfonso makes no impression upon us whatever.
Our opinion is that neither driver made any attempt to apprise herself of prevailing traffic conditions and both, failing in the legal duty of seeking what was there to be seen, heedlessly entered the intersection. Miss Dombourian gambled on a safe crossing while Mrs. Alfonso took a chance of making a safe right turn. There is no lingering doubt in our minds that both cars were in close proximity to the intersection and had either driver seen the other and had exercised the slightest degree of prudence and caution the accident could never have happened.
*229 Linda Dombourian did not attain a pre-emptive right of way in light of the circumstances in the case. It may be perfectly true that she had traversed most of the intersection when the crash occurred but she had entered the intersection oblivious of the Alfonso car on Carnot which was in close proximity. The jurisprudence is so well settled that citation of authorities is unnecessary to the effect that pre-emption does not result from merely entering an intersection first. In order to preempt an intersection the motorist must show that he made a lawful entry therein after ascertaining that oncoming traffic is sufficiently far removed as to permit a safe passage and under the bona fide belief and expectation that he can negotiate a crossing with safety.
The combined and concurrent negligence of both drivers was the proximate cause of the accident and the appellant insurers must respond in damages in solido.
Appellant Allstate Insurance Company contends, in the alternative, that judgment should not have been rendered against it because the testimony of Rhodus amounted to a judicial confession negating any negligence on the part of Miss Dombourian. Counsel say in brief:
"* * * the testimony by plaintiff, * * * is clear and unequivocable and shows beyond challenge that Linda Dombourian was free of any negligence. This testimony serves as a judicial confession in favor of appellant in the event other facts lead this Honorable Court to conclude that Linda Dombourian might have been negligent. Louisiana Civil Code, Article 2291, establishes clearly that a judicial confession amounts to full proof and cannot be revoked."
Dean A. Rhodus under direct examination by his attorney did say that Linda Dombourian was proceeding approximately 15 to 20 miles an hour as she approached the intersection, and that she blew the horn and slowed her vehicle and looked to her right before entering the intersection and that her car was struck on its extreme rear when she had almost negotiated a safe crossing.
We do not believe that this testimony of Rhodus exonerates the driver of the vehicle in which he was riding from negligence. It is to be noted that in the petition filed on his behalf it is alleged that, among other things, Linda Dombourian failed to keep a proper lookout and drove without due caution and circumspection. The testimony in no way exculpates the insurer of the Dombourian car from liability. Taking every word spoken by Rhodus at its face value there is clearly no indication or even intimation that Linda Dombourian was free of negligence in the two respects above mentioned, or that the witness was confessing her freedom from fault.
The impact of the collision threw Dean Rhodus, who was seated next to the driver, against a door of the car and he was injured. He was taken to the Charity Hospital early the same evening where the physicians diagnosed his injuries as a laceration one-half inch long on his right arm, two inches above the elbow. The laceration was sutured and the usual precautionary measures against infection were taken by the administration of tetanus shots, etc. He was then permitted to go home. A week later the sutures were removed and the patient discharged.
About six months after the accident Rhodus went to a Dr. DiLeo, (for what purpose we are not informed) and Dr. DiLeo referred Rhodus to Dr. John Nabos, an orthopedic surgeon, for an examination of his right arm and the completion of certain undescribed forms for an insurance company.
Young Rhodus claims that after his discharge by the Charity Hospital his arm remained swollen for a month or so and that a mass appeared and manifested itself in the swollen region about three weeks after the accident. While Rhodus states that this condition is persistently painful it is indicated that he did not seek medical *230 help from Dr. DiLeo but went to the physician regarding the insurance forms.
Dr. Nabos, for the purposes of making an examination and taking X-ray pictures, saw Rhodus on two occasions; firstly, on November 22 and again on February 10, 1962.
Dr. Nabos found a mass of tissue measuring 2 × 2 inches on the inside of the arm just above the crease in the elbow and his opinion was that there was some muscle damage in the arm and his prognosis was that the mass was benign, would not become any worse, and that its size would remain static. Dr. Nabos estimated that Rhodus' right arm is disabled to the extent of three to five per cent. He would not recommend surgery.
There was a sharp issue made as to whether the soft tissue mass was caused by trauma received in the accident. Dr. Nabos stated that the condition could have been brought about by several different causes, one of which was trauma. He said that based on the history given by the patient the only conclusion he could reach was that the condition was caused by the trauma.
The boy testified that he was very active, was interested in athletics, and engaged in several sports in high school but that due to his injuries he lost his skill in some of the athletic endeavors and particularly pointed out in what respects he could not play baseball and basketball as well as he could before the accident. The trial judge was impressed with the boy's athletic achievements and personally questioned him at length with respect thereto. There was no countervailing evidence.
At the time of the trial Rhodus was going to a college in California studying for a musical career.
After closely analyzing and sifting the testimony bearing on the issue of quantum our opinion is that the judge abused his discretion in making the allowance of $7000 for the injuries which is manifestly excessive. See Gaspard v. LeMarie, 245 La. 239, 158 So.2d 149, and Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64. Our firm opinion is that the amount of the judgment should be reduced to $3500, which sum, we believe, will do substantial justice. See Anselmo v. United States Fire Insurance Company, 169 So.2d 550, decided by this court.
For the reasons assigned, the judgment is amended so as to reduce the award made to plaintiff for the use and benefit of his minor son from $7000 to $3500, and as thus amended and in all other respects the judgment is affirmed. Appellants are to pay the costs of this court.
Amended and affirmed.