SAVOY, Judge.
This is an action ex delicto filed by plaintiff against Trophy Nut Company, its employee, Joseph N. Galley, and its insurer, American Fire and Casualty Company, for injuries received by plaintiff in a collision which occurred on the night of November 11, 1965, between a truck driven by Galley and owned by Trophy, and an automobile owned and driven by plaintiff, wherein plaintiff received serious injuries.
After a trial on the merits judgment was rendered in favor of plaintiff and against defendants in solido in the sum of $55,497.-64. Of this amount $45,000.00 was awarded plaintiff for pain and suffering and for future loss of earnings. The remainder of the judgment was for special damages, including future medical expenses.
In argument before this Court counsel for appellants conceded that the only issue was that of quantum. He complains, primarily, that the award of $45,000.00 is excessive and should be reduced.
The evidence reflects that the vehicles mentioned herein had a head-on collision in plaintiff’s lane of traffic. Plaintiff was sent by ambulance to St. Frances Cabrini Hospital at Alexandria, Louisiana. He was referred to Dr. P. M. Davis, Jr., who specializes in orthopedic surgery. Dr. Davis called Dr. Marion Lee Jarrell for consultation and examination of the patient. Dr. Jarrell does general surgery.
Dr. Jarrell saw plaintiff upon his arrival at the hospital. He testified that plaintiff had lacerations of the forehead measuring six and four inches, respectively. He had a skin flap raised over the right zygoma, (area between temple and cheek bone) which was about 21^ centimeters in length. There was an abrasion of the right ear which was one inch in diameter. There was an ecchymosis (discoloration of the skin caused by the ex-travasation of blood) of the right chest wall. The doctor also found a mild brain concussion. The lacerations were sutured. He also found the patient had a black eye. The patient was seen twice a day until his discharge on December 9, 1965. The patient complained of numbness of his right gum and a tingling sensation in the upper lip. The doctor stated that plaintiff did not make this complaint while in the hospital but did complain about these symptoms on an office visit. He was of the opinion that this condition could have been caused by a trauma to the peripheral nerves received in the accident.
*718 Dr. Davis also saw plaintiff on the night of the accident. The plaintiff was in shock and showed evidence of cerebral concussion. He found a laceration of the left side of his forehead with multiple contusions over his body and head. He had an open supracon-dylar comminuted fracture of the left femur, an injury to the right knee and a contusion of the left forearm. The fracture was just above the knee. The skin was broken, and the bone stuck out through the skin causing an open fracture. The fracture was in many pieces, and the femur or thigh bone was broken into many pieces. The fracture extended into the knee joint. After plaintiff was out of shock, he was put to sleep and surgery was performed. The injury was debrided and fixed with two Rush nails. In order to insert the nails the bone had to be drilled near the knee in two places and the nails inserted in the holes. — The placing of the nails produced a slight deformity of the knee. Due to the accident one of the plaintiff’s legs is approximately one inch shorter than the other. The doctor stated that a good reduction was obtained. After surgery plaintiff’s left leg was supported by placing it in a balanced frame. Dr. Davis performed a second operation on November 29, 1965. This was because of a fracture of the right knee cap which occurred in the accident in the instant suit. The knee cap was pulverized in a bunch of small pieces. So the knee cap was removed. After the operation, a long leg cast was applied.
Plaintiff was readmitted to the hospital on December 20, 1965. At that time the cast on the lower right extremity was cut in half, the top half being removed and minimal exercises started. The other part of the cast was kept for two weeks, but the leg was removed from the splint daily for exercises by Mr. Jess Hunt, the physical therapist. The plaintiff was discharged on January 27, 1966. Upon discharge the patient had motion in the right knee from 180 degrees of extension to 80 degrees of flexion. The left knee was from a little less than full extension to about 145 degrees of flexion. This 145 degrees of flexion actually represented about 35 degrees of motion in that knee.
Dr. Davis saw plaintiff on February 18, 1966. The patient was instructed to increase exercises to the right quadriceps and start exercise on the left.
On March 12, 1966, the plaintiff was lifting 35 pounds with his right quadriceps and 4 pounds with the left.
On April 8, 1966, plaintiff was instructed to continue use of his crutches.
On April 29, 1966, he could lift 35 pounds with his left quadriceps and 40 pounds with' his right.
On May 27, 1966, plaintiff was lifting 50 pounds with his left quadriceps and 60 pounds with his right quadriceps.
On June 24, 1966, the motion in the left knee was from 180 degrees of extension to 100 degrees of flexion. He could lift 60 pounds with his right quadriceps. The doctor felt that plaintiff had reached maximum benefits from physical therapy and that he could slow down on his exercises.
Plaintiff had good motion in the right knee and limited motion in the left one.
Dr. Davis was of the opinion that plaintiff had suffered a permanent disability of 25% in both lower extremities. Dr. Davis was of the opinion that 12i^% of the disability was caused by arthritic changes in the left knee which was aggravated by the accident.
Plaintiff was also examined by Dr. George P. Schneider, an orthopedic surgeon, from May 9, 1966 through December 20, 1966. He was of the opinion that plaintiff’s permanent disability would be between thirty and forty per cent.
Both Dr. Davis and Dr. Schneider testified that plaintiff would have to have the pins removed from his leg.
The record also reveals that plaintiff developed kidney stones. Dr. Thielen, a spe *719 cialist in urology, testified that the kidney stones were due to plaintiff’s inactivity for many months and that surgery would be necessary to correct this condition.
At the time of the accident, plaintiff was a Pontiac dealer at Oberlin, Louisiana. He testified that he sold approximately four cars per month prior to the accident, whereas since the accident he is selling about two or three cars per month. He has no salesman and attributes the decline in sales to the fact that because of his physical infirmity he cannot get around as well as before, consequently a decline in sales. He estimated his loss of earnings at $1,200.00 per year.
Counsel for appellants is concerned about the size of the award for general damages, namely $45,000.00. He thinks it is grossly excessive. He has cited many cases in support of his position. Counsel for plaintiff has cited cases which he contends support the finding of the trial judge.
We can increase or decrease an award only in cases where there has been a great abuse of discretion by the jury or trial judge.
The latest expression on this matter is the recent case of Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, wherein the Supreme Court of this State reversed a judgment of this Court which had reduced a jury award of $10,000.00 to $5,500.00. The Supreme Court reinstated the jury verdict.
Were it not for the Lomenick case, supra, we would be inclined to reduce this award in the instant case. But, in view of that case, we cannot say that the trial judge abused the great discretion vested in him.
Accordingly, the judgment of the district court is affirmed at appellants’ costs.
Affirmed.