217 So.2d 684 (1969)
Helen WYBLE, widow of Merton R. PARISH, Plaintiff-Appellant,
v.
Leon J. MINVIELLE, Sr., et al., Defendant-Appellee.
No. 2528.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1969.
*685 Smith & Stansbury, by J. Michael Fernandez, Jr., Lafayette, for plaintiff-appellant.
Armentor & Resweber, by A. J. Resweber, New Iberia, for defendant-appellee.
Before FRUGE, SAVOY, and HOOD, JJ.
FRUGE, Judge.
This is a wrongful death action for the death of Merton R. Parish, brought by Helen Wyble, his surviving widow, by *686 virtue of an alleged common-law marriage contracted in the State of Texas.
The defendants, sued in solido, are Leon J. Minvielle, Sr., and his children, Leon J. Minvielle, Jr., Mildred Minvielle Duhe, and Mrs. Sue Minvielle Resweber. Travelers Insurance Company, the compensation insurer of Loffland Brothers Company, intervened to recover workmen's compensation benefits it became obligated to pay plaintiff by reason of the death of Merton R. Parish.
The suit arises out of an automobile collision which occurred on November 6, 1957, on U.S. Highway 90 east of the city limits of New Iberia, Iberia Parish, Louisiana.
The collision was between the automobile Mr. Parish was driving and the one that Mrs. Georgie Harry Minvielle, the wife of Leon J. Minvielle, Sr., and the mother of the other defendants, was operating. Both drivers were fatally injured in the accident.
Mrs. Georgie Harry Minvielle, wife and mother of the defendants, was driving a 1952 Chevrolet automobile in an easterly direction on Highway 90. Mr. Parish was driving a 1955 Chevrolet automobile in a westerly direction on the said highway. The collision occurred as Mrs. Minvielle was attempting to make a left turn from the highway to her driveway located on the north side of the highway.
According to the testimony in the record, Mrs. Minvielle turned directly into the path of the Parish vehicle, striking the left front portion of Mr. Parish's vehicle with the right front portion of her car. The collision occurred in Mr. Parish's lane of travel, the west-bound lane. The speed limit on the section of Highway 90, the highway in question, is sixty miles per hour.
An eye witness, Wallace Romero testified he was traveling west in his dump truck about thirty-five to forty miles per hour. At an estimated six hundred feet from the scene of the accident, Mr. Parish overtook and passed him at a speed of fifty-five miles per hour. Thereafter, Romero saw Mrs. Minvielle, who was traveling very slowly, make a left turn to enter her driveway in front of the Parish vehicle. Collision in Mr. Parish's lane immediately followed.
On the morning of the accident, Mrs. Minvielle had attended the formal opening of a branch for the bank of which her husband was president. She then went to the beauty shop to have her hair done, and she was on her way home to prepare a luncheon for the guests who had attended the formal opening, when the accident occurred.
After the death of Mrs. Minvielle, her husband continued in use and possession of all the community property, and her husband and children joined in executing a sale of the home which was a community asset. At the time of the trial, Mrs. Minvielle's succession had not been formally opened and no administrator or executor had been appointed.
In ruling for plaintiff, Mrs. Parish, the lower court found that Mrs. Minvielle was negligent in attempting to turn in the face of the oncoming vehicle of Mr. Parish. The court held that Mrs. Minvielle was on a community mission and therefore the community between her and her husband became liable for her negligence. Further, the court held that the Minvielle children had tacitly accepted their mother's succession when they joined in the sale of the home which was a community asset, and therefore they became liable as her heirs.
In regard to the alleged common-law marriage between plaintiff, Helen Wyble, and decedent, Merton R. Parish, the trial court found that under Texas law, the plaintiff and the decedent had entered into a valid common-law marriage, and that therefore, Louisiana courts had to give full faith and credit to the Texas marriage, thereby making Helen Wyble, the legal widow of Merton R. Parish, entitled to recover under L.S.A.-C.C. Art. 2315.
*687 As to quantum, the lower court rendered judgment in favor of plaintiff and against the defendants in the sum of $28,701.95. Plaintiff appeals to this court on the grounds that the award was grossly inadequate.
Although we find possible merit in only one or two issues of this case, we shall discuss all of them, at least in brief.

(1) NEGLIGENCE.
As this court noted in the case of Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App.3d Cir., 1968), it is well established that a motorist who attempts to make a left turn on a public highway must ascertain before making the turn that it can be negotiated in safety, and when an accident occurs, as a left turn is being made, the burden rests heavily upon the driver who was making the left turn to explain how the accident occurred, and to show that he was free from negligence. See Huntsberry v. Millers Mutual Fire Insurance Co., 205 So.2d 617 (La.App.3d Cir., 1967) and citations therein. We noted further that in general there were two major obligations or duties of a person making a left turn on a Louisiana highway, the first being that of giving a proper signal, and the second being that of maintaining a proper lookout and in so doing not making a turn endangering a motorist oncoming or following. See L.S.A.R.S. 32:104(B).
In this case, there is little dispute that Mrs. Minvielle turned into the path of Mr. Parish's vehicle and made the collision unavoidable. The sole eye witness, Mr.Wallace Romero, testified that it was his belief that no signal had been given, and in light of all the evidence, there can be no other conclusion than that Mrs. Minvielle was paying little attention to her driving, and therefore had not maintained a proper lookout as to the direction of her travel. Thus, it is the finding of this court that the proximate cause of this unfortunate accident was Mrs. Minvielle's negligence in turning into the path of Mr. Parish's car in such close proximity to it that neither driver had the opportunity to avoid the collision.
(2) THE LIABILITY OF THE COMMUNITY.
The evidence in the record reveals that Mrs. Minvielle was returning home to prepare a luncheon for the guests who had attended the formal opening of a branch of the bank of which her husband was the president. We, as did the lower court, feel that she was therefore on a community mission that rendered the community existing between her and her husband liable for her actions. See Moreau v. Corley, 212 So. 2d 566 (La.App.4th Cir., 1968), and citations therein.

(3) THE LIABILITY OF THE HEIRS.
It was stipulated that after Mrs. Minvielle's death her husband continued in possession of the community property, and that sometime thereafter he and his children executed a sale of their home property. At the time of the trial, her succession had not been opened and no administrator or executor had been appointed. Under the provisions of our revised Civil Code, in particular L.S.A.-C.C. Arts. 992 and 999, these acts bound her children as her heirs.[1]

(4) THE COMMON-LAW MARRIAGE.
It is the principal defense of the defendant-appellees that the plaintiff is not the surviving legal widow of the deceased, Merton R. Parish. They contend that she and Mr. Parish were never legally married.
Plaintiff contends that she is the common-law wife of decedent, recognized as *688 such under the laws of the State of Texas where their union was made in 1938.
The record shows that on April 18, 1938, Helen Wyble left the home of her cousin with whom she was living in Opelousas, Louisiana, and journeyed to Houston, Texas, allegedly to visit with an uncle and aunt, but in reality to visit the decedent Merton R. Parish, a Texan whom she had been dating in Opelousas, since January, 1938. On April 19, 1938, the couple decided to become man and wife and took up residence at the Lee Hotel in Houston, where Mr. Parish had been residing. According to Helen Wyble's testimony, her intention was to live with him and become his common-law wife, there being no impediment to their marriage, neither of them having been married before, and that they lived together from then on until the time of Mr. Parish's death.
Helen Wyble testified that the couple moved to many places, as Mr. Parish's employment required, his being employed as a driller, by Loffland Brothers Inc., and he was hired to go from place to place. The couple obtained passports as husband and wife and went to South America, where they stayed about four years. They opened joint bank accounts in different places, credit accounts, bought property in Louisiana, granting a building and loan association mortgage on it as husband and wife, and filed joint income tax returns. During all the years, the couple held themselves out to friends and relatives as husband and wife.
A Texas attorney, Mr. Sam Williamson, testified by deposition that under the circumstances noted above, under the laws of Texas, there would be no question that the couple would be recognized as husband and wife. He noted that the Texas courts had established three requirements for a valid common-law marriage, the lead case being Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L.R.A. 1915E, 1, (1913).
The requirements are:
(1) There must be no legal impediment to the marriage of such persons to each other.
(2) They must agree then and there to become husband and wife, which may be implied, and
(3) They must hold themselves out publicly as husband and wife.
Under the facts of this case, we have no doubt that the union created between the plaintiff and decedent met these requirements. Under the laws of Texas they were, therefore, husband and wife.
Defendants in their briefs state, "It is obvious that both parties were aware that this sort of relationship could not be undertaken in Louisiana, so plaintiff-appellant journeyed to the State of Texas to achieve her purpose."
It is true that Louisiana does not recognize or permit the contracting of common-law marriages in this state,[2] but we are obliged to give effect to such marriages when they are validly contracted in another state. This is commanded by the full faith and credit clause of the United States Constitution, Art. 4, Section 1.
In the cases of Gibbs v. Illinois Central Railroad Co., 169 La. 450, 125 So. 445 (1929), and Chivers v. Couch Motor Lines, Inc., 159 So.2d 544, (La.App.3d Cir., 1964), the above noted principle was upheld. We cite from our language in the Chivers case, where we stated:
"For the foregoing reasons, we affirm the trial court's finding that the plaintiff has adequately proved that she and the decedent entered into a common-law marriage valid under the laws of Florida, where contracted. Accordingly, the plaintiff and her children are entitled to recover for the wrongful death of the decedent Chivers as his surviving spouse and legitimate children."
*689 It seems that the Chivers case is squarely in point, and we can do naught but follow it.
For the foregoing reasons, we are of the opinion that Helen Wyble was, in fact, the legal wife, and now the widow of the decedent, Merton R. Parish.

QUANTUM
Under recent jurisprudence, the appellate courts are bound by the lower court's determination of damages unless great abuse of the discretion vested in the lower court can be found. See Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967); Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963); Fuselier v. Trophy Nut Company, 204 So.2d 716 (La.App.3d Cir., 1967), writs refused 1968.
Plaintiff's petition requested the following amounts as damage awards:

1) Loss of love, affection, companionship---------------$ 10,000.00
2) Mental pain and suffering ---------------------------$ 5,000.00
3) Loss of support -------------------------------------$ 86,400.00
4) Burial and funeral expenses--------------------------$ 1,201.95
 ___________
 TOTAL $102,601.95
 -----------
In its assessment of damages the lower court awarded the following:
1) Loss of love, affection, companionship---------------$ 5,000.00
2) Mental pain and suffering----------------------------$ 2,500.00
3) Loss of Support--------------------------------------$20,000.00
4) Burial and Funeral expenses--------------------------$ 1,201.95
 __________
 TOTAL---------------------$28,701.95
 ----------

After a close study of the record of this case and the jurisprudence on the issues, we feel that all of the awards, with the exception of that for loss of support, were proper as to amount.
As to loss of support, it was some time ago that the Supreme Court announced the rule that mathematical formulae were not to be used to figure loss of support. See Pennington v. Justiss Mears Oil Company, 242 La. 1, 134 So.2d 53 (1961). However, we must consider the facts of age, salary, life expectancy, factors that courts have considered since the Pennington decision, to arrive at an award which is just and proper according to the particular facts of each case, and in approximation of what loss the remaining spouse will actually encounter.
Here the decedent was about forty-eight years old at the time of death. He was gainfully employed at a job and skill he had performed for quite a number of years. Prior to his death, his average yearly gross income amounted to over $9,500.00 and he had some 23.08 more years of life expectancy.
It seems obvious to us, that the $20,000.00 loss of support award made to Mrs. Parish by the lower court was grossly inadequate. Ever since the contracting or formation of their union, Mrs. Parish depended solely on the decedent for support. The evidence revealed he was a good supporter and Mrs. Parish had evidently never found need to work. A total figure of only $20,000.00, we do not believe would truly reflect Mr. Parish's earning capacity had he lived to support his wife.
In light of the above facts and in line with previous awards by other courts, including our own, in similar cases, the award to plaintiff for loss of support is raised to $30,000.00. Authority for an *690 award of that sum can be found in a comparison of the awards in the following cases: Houston v. City of Shreveport, 188 So.2d 923 (La.App.2d Cir., 1966); Tison v. Fidelity and Casualty Company of New York, 181 So.2d 835 (La.App.2d Cir., 1965); Lloyd v. T. L. James & Company, 178 So. 2d 370 (La.App.1st Cir., 1965); Averette v. Travelers Insurance Company, 174 So. 2d 881 (La.App. 1st Cir., 1965); Bohlender v. Bayou Tours, Inc., 156 So.2d 255 (La. App. 4th Cir., 1963); Landry v. American Surety Company of New York, 149 So.2d 738 (La.App. 1st Cir., 1963); Jones v. Lee, 144 So.2d 405 (La.App. 1st Cir., 1962); Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3d Cir., 1962); Stephens v. Natchitoches Parish School Board, 137 So.2d 116 (La.App. 3d Cir., 1962); Simon v. Texas & New Orleans Railroad Company, 124 So.2d 646 (La.App. 3d Cir., 1960).
In summary, the $28,701.95 awarded to plaintiff was inadequate, and this court having compared the factual situation of this case to that of others wherein wrongful death awards were itemized, feels that an award totaling $38,701.95, plus interest and cost of both courts, is the proper award plaintiff is owed.
In addition to agreeing with the trial court's determination of the issues, with the exception of the award, this court agrees that Travelers Insurance Company is entitled to be reimbursed, out of the judgment herein rendered in favor of plaintiff, the amount it has become obligated to pay in workmen's compensation, and the $600.00 funeral expenses.
For the reasons assigned there shall be judgment herein in favor of Helen Wyble Parish, plaintiff-appellant, and against defendants, Leon J. Minvielle, Sr., and his children, Leon J. Minvielle, Jr., Mrs. Mildred Minvielle Duhe, and Mrs. Sue Minvielle Resweber, all in solido, in the full sum of $38,701.95, together with legal interest and all costs. And thus amended, the judgment of the lower court is affirmed.
Amended and affirmed.
NOTES
[1] L.S.A.-C.C. Art. 999 provides in part: "* * * [T]he sale of the least article of property belonging to the succession will render the person called to the succession irrevocably the heir * * *."
[2] See Succession of Marinoni, 177 La. 592, 148 So. 888 at 894.