GLADNEY, Judge.
The defendants have appealed from a judgment awarding damages in favor of Glover L. Stamper, whose Chevrolet pickup truck was involved in a collision with a Ford pick-up truck driven by Truitt F. Lenard on April 30, 1968 near the driveway of the Stamper home at 725 Smith Street in West Monroe, Louisiana. The defendants are Lenard and his liability insurer, Allstate Insurance Company.
The accident took place about 11:15 A. M. on a clear dry morning. At the time Stamper was proceeding westerly at a speed which he estimated to be about 15 miles per hour. His truck was closely followed by Lee Underwood driving a Volkswagen, and a short distance behind the Volkswagen Lenard was driving his Ford pick-up. As Stamper neared his driveway Underwood pulled out and executed a passing maneuver.
Stamper testified that as Underwood was passing he activated his left turn blinker signal with the intention of making a left turn into the narrow driveway; that he reduced the speed of his truck and observed through his rearview and side mirrors that no traffic was approaching from the rear. Notwithstanding his caution, when he commenced to cross the eastbound traffic lane to enter his driveway the *490 collision took place. The locus of the impact was in the center of the eastbound traffic lane and Stamper’s truck was struck on the left rear fender by the right front of the vehicle driven by Lenard.
Stamper’s testimony that he activated his left turn signal 100 to 150 feet before arriving at his driveway was corroborated by three persons who testified they witnessed the signal light from their positions in houses facing Smith Avenue. The testimony was contradicted by Lenard and two passengers in his truck who testified that shortly after Underwood commenced his passing maneuver Lenard also began to pass Stamper; that at that time the blinker light of the Stamper truck was not on; that Lenard commenced his maneuver when a distance of 100 feet or less from the Stamper driveway; and that when he started he sounded his horn to indicate his passing maneuver. The investigating officer, Sergeant John W. Harris, found that Lenard’s truck left 60 feet of tire marks leading to the point of impact of the two vehicles.
The trial judge concluded the evidence disclosed that when Lenard began his passing maneuver the signal light of the Stamper vehicle was working, and Lenard was negligent in failing to observe the light and by following too closely behind tjhe Stamper vehicle.
We believe it would serve no good purpose by attempting to resolve the conflicts in the testimony. The testimony of Stamper, however, indicates he failed to make proper observation before undertaking the left turning movement and was guilty of negligence that was a proximate cause of the accident.
The following testimony by Stamper is illustrative:
“Q Did you at any time see the vehicle that collided with you?
“A No, sir, when I turned my lights on I looked in my rear view mirror and I looked in my side mirror and then when I come down to my street I come to a stop and turned and checked again' and I did not see that pickup truck.”
“Q Which mirrors did you look in?
“A I looked in both of them, I checked my back one and then I stopped and checked my side one and I didn’t see any pickup truck.
“Q How do you account for not seeing it?
“A I can’t figure that out.
“Q You know now he was there don’t you?
“A Well I can’t figure it out because I checked both mirrors, I can’t figure that out that I didn’t see him before I turned.”
******
“Q And you can’t account for when you looked in and stopped to make your turn why you didn’t see this oncoming truck ?
“A No, sir, I looked — checked both mirrors, I looked close and I didn’t see the truck.
“Q Do you think your mirrors were just out of kilter?
“A No, sir, I can see a distance down the road.
“Q Nothing wrong with your mirrors just prior to the accident?
“A No, sir.
“Q Well where do you think he was when you looked to—
“A —I don’t know unless he wasn’t in view of my mirrors when I was making my turn. I don’t know just how I missed him but I checked and I didn’t see him, when I made my turn to go in.”
*491 This evidence establishes to our satisfaction that plaintiff attempted his left turn into his driveway without looking to the rear and ascertaining the condition of approaching traffic from that direction. He concedes as indeed he must that the truck was where it should have been seen.
The court in Rhodus v. Allstate Insurance Company, La.App., 192 So.2d 226 (4th Cir. 1966) set forth the law as follows, to-wit:
“It is a presumption of law, juris et de jure, that a person saw a thing that he should have seen had he looked, and his failure to see what was there to be seen constitutes negligence. Jackson v. Cook, 189 La. 860, 181 So. 195; Scheib v. Ledet, La.App., 57 So.2d 814; Flowers v. Indemnity Ins. Co., La.App., 46 So.2d 776; Hirsch v. Kendrick, La.App., 43 So.2d 692; Maher v. New Orleans Linen Supply Co., La.App., 41 So.2d 101.” [192 So.2d 226, 228]
“ * * * it is well established that a motorist who attempts to make a left turn on a public highway must ascertain before making the turn that it can be negotiated in safety, and when an accident occurs, as a left turn is being made, the burden rests heavily upon the driver who was making the left turn to explain how the accident occurred, and to show that he was free from negligence. See Huntsberry v. Millers Mutual Fire Insurance Co., 205 So.2d 617 (La.App.3d Cir., 1967) and citations therein. We noted further that in general there were two major obligations or duties of a person making a left turn on a Louisiana highway, the first being that of giving a proper signal, and the second being that of maintaining a proper lookout and in so doing not making a turn endangering a motorist oncoming or following. See L.S.A.-R.S. 32:104(B).” [Parish v. Minvielle, La.App., 217 So. 2d 684, 687, 3d Cir. 1969],
The Supreme Court in Washington Fire & Marine Insurance Company v. Fireman’s Insurance Company, 232 La. 379, 94 So.2d 295, 296 (1957) stated the law as follows:
“ * * * The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver ‘shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.’ Among pertinent cases are Lane v. Bourgeois, La.App., 28 So.2d 91; Home Insurance Co. v. Warren, La.App., 29 So.2d 551; Michelli v. Rheem Mfg. Co., La. App., 34 So.2d 264; Malone v. Fletcher, La.App., 44 So.2d 352; Zurich Fire Ins. Co. of New York v. Thomas, La.App., 49 So.2d 460; and Codifer v. Occhipinti, La.App., 57 So.2d 697. In the last cited case the Court of Appeal for the Parish of Orleans aptly stated that ‘When such a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence.’ ” [194 So.2d 295, 296]
Having reached the conclusion that plaintiff by his own admission was guilty of negligence in not making proper observation to the rear before attempting his left turn maneuver, there is no need to give consideration to the other defenses presented by appellants. It follows from the reasons set forth the judgment appealed should be reversed and plaintiff’s suit dismissed at his cost.
Reversed.