WILLIAMS, Judge.
Maryland Casualty Insurance Company, as subrogee of its insured, Mrs. Patricia Garland, filed this suit against the Southern Farm Bureau Casualty Insurance Company, insurer of William E. Dear, for damages totaling $835.54. From an adverse judgment plaintiff has appealed.
Plaintiff contends the trial court erred in concluding that its insured, Mrs. Patricia Garland, was contributorily negligent.
This suit resulted from a rear-end collision between an automobile driven by William E. Dear and an automobile driven by Mrs. Patricia Ingram Garland. The accident took place at about 4:30 P.M. on January 17, 1967 on Highway 80 in Rich-land Parish approximately 7.1 miles west of the city limits of Rayville. Highway 80 at this point runs east and west, is straight, with clear visibility for some distance in either direction. On its north side it is intersected by a public blacktop road. At the time of the accident the surface was wet due to a recent shower and existing misty weather conditions. There were five vehicles in, a row all moving eastward approaching the intersection. First in line was a “semi-truck” traveling at a modest rate of speed; the second vehicle was Mrs. Garland’s which was followed by three other cars, the last driven by Mr. Dear. At some point prior to reaching the intersection Mr. Dear’s vehicle began its passing maneuver by pulling from the rear of the line of traffic into the left lane. He testified that he had passed the second vehicle behind the Garland auto and was even with and passing the first vehicle behind Mrs. Garland when she put on her left blinker light. There were no oncoming vehicles which would have pre *89 vented Mr. Dear from passing in safety, and he proceeded at approximately 55 miles per hour, a lawful speed at this point, when he observed Mrs. Garland’s left-turn signal, after which she angled into the left lane of traffic and further reduced her speed. The evidence shows that Mrs. Garland’s vehicle was then traveling at a speed of approximately 20 miles per hour. Mr. Dear testified he was unable to turn to the right because of the car he was then passing, nor was he able to turn to the left because of a ditch on the north side of Highway 80. He applied his brakes, his car skidded on the wet highway and a collision resulted.
State Trooper Wilton H. Thomason, the investigating officer, testified that the rear portion of the Garland vehicle.was struck by the front portion of the vehicle driven by Mr. Dear; that the actual contact between the two vehicles occurred in the north lane of Highway 80. Following the accident Mrs. Garland’s car came to rest in the ditch along the side road. Mr. Dear’s car remained in the north lane of traffic.
Mrs. Garland, who was injured in the accident, very frankly stated that she did not remember what took place following the accident; that she never .saw the vehicle driven by Mr. Dear, and that she was watching the headlights of the vehicles behind her through her rearview mirror. It appeared to her that these cars had slowed down when she indicated her intention to turn left. Pertinent to the conclusions reached by this court is the statement made by Mrs. Garland:
“A. I looked in the rear view mirror to see if those cars were still in the right lane. * * * It’s dangerous to make a left turn there and I thought all of those cars were still behind me and I started to turn. Perhaps I was looking in front of me. I don’t know but I did not see the car that hit me.
“Q. Well, the fact remains, Mrs. Garland, as has been testified, Mr. Dear passed two cars and he was in the left lane and then he struck you. At no time did you ever see Mr. Dear — (she shakes her head for ‘No’) ?
“A. I’m sorry, No.” [Tr. p. 34]
The record does not indicate the exact distance between the collision point and the intersection of the blacktop highway leading north from Highway 80.
The responsibility of the left-turning driver has often been reiterated by the courts of this state. This well-settled rule is plainly stated in Ruple v. Travelers Indemnity Company, 129 So.2d 240 (La.App. 2d Cir. 1961) as follows:
“It is the well-settled law and jurisprudence of our state that a person who attempts to make a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain before turning that the turn can be made safely without endangering normal overtaking or on-coming traffic. Blanchard v. Ashby Construction Co., La.App., 1st Cir. 1957, 95 So.2d 670; Methvin v. Roshto, La.App. 1st Cir. 1957, 96 So.2d 383. The onerous burden placed upon a left turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the instant case, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. * * *” [129 So.2d 240, 243]
In Service Fire Insurance Company of New York v. Suezy, 77 So.2d 110 (La.App., 1st Cir. 1954) the court made this pertinent observation:
“By his own admission the defendant did not exercise such caution, as, although he knew that the Hartner car was following him, he did not look immediately prior to turning to determine that the way was clear. Regardless of whether or not he had given a hand signal, he knew that there was *90 traffic behind him and yet failed to exercise the caution that the law imposes upon him. By just giving the hand signal Suezy only performed one-half of his duty. He should have looked to see if the way was clear. If he had looked, he would have seen he could not make the turn safely. This is similar to a motorist who comes to an intersection and stops but fails to look for approaching traffic. He only performs one-half of his duty under the law. This was definitely an act of gross negligence on the part of the defendant and was a proximate cause of the accident, if not the proximate cause of the accident.” [77 So.2d 110, 112]
In the recent case of Allstate Insurance Company v. Acosta, 224 So.2d 487 (1st Cir. 1969) the court found that a left-turning motorist must exercise a high degree of care in executing this turn and is required to ensure that the turn can be made without endangering overtaking motorists, and a left-turning motorist’s duty demands not only proper signaling of intent to turn but also adequate observation to the rear. LSA-R.S. 32:104.
The court in Rhodus v. Allstate Insurance Company, 192 So.2d 226 (La.App., 4th Cir. 1966) set forth the law as follows:
“ * * * It is a presumption of law, juris et de jure, that a person saw a thing that he should have seen had he looked, and his failure to see what was there to be seen constitutes negligence. Jackson v. Cook, 189 La. 860, 181 So. 195; Scheib v. Ledet, La.App., 57 So.2d 814; Flowers v. Indemnity Ins. Co., La.App., 46 So.2d 776; Hirsch v. Kendrick, La.App., 43 So.2d 692; Maher v. New Orleans Linen Supply Co., La.App., 41 So.2d 101.” [192 So.2d 226, 228]
Again in Parish v. Minvielle, 217 So.2d 684, (La.App.3d Cir. 1969) the court said:
“ * * * it is well established that a motorist who attempts to make a left turn on a public highway must ascertain before making the turn that it can be negotiated in safety, and when an acci-rent occurs, as a left turn is being made, the burden rests heavily upon the driver who was making the left turn to explain how the accident occurred, and to show that he was free from negligence. See Huntsberry v. Millers Mutual Fire Insurance Co., 205 So.2d 617 (La.App. 3d Cir., 1967) and citations therein. We noted further that in general there were two major obligations or duties of a person making a left turn on a Louisiana highway, the first being that of giving a proper signal, and the second being that of maintaining a proper lookout and in so doing not making a turn endangering a motorist oncoming or following. See LSA-R.S. 32:104 (B).” [217 So.2d 684, 687]
Inasmuch as Mrs. Garland conceded her unawareness of the presence of the overtaking Dear vehicle and did not look other than to consult her rearview mirror seconds before making her left turn, she must be found guilty of negligence which was the proximate cause of the accident. Had she looked before commencing her turn instead of “perhaps just looking ahead” after glancing into her rearview mirror, she would or should have seen the Dear vehicle. Even though she had her left turn indicator operating she performed only part of the duty required by law.
Therefore, for the reasons stated above, the judgment is affirmed at appellants’ cost.