**WALTERS et al. v. RELIANCE INDUS-TRIAL LIFE INS. CO. et al.**

No. 5596.

Court of Appeal of Louisiana. Second Circuit.

Jan. 28, 1938.

Rehearing Denied March 8, 1938.

Writ of Certiorari and Review Denied May 2, 1938.

Sylvian W. Gamm, of Shreveport, for appellants.

J. S. Peters and George Thurber, both of Shreveport, for appellees.

HAMITER, Judge.

In consideration of an agreement to pay a monthly premium of $1, the defendant, Reliance Industrial Life Insurance Company, issued on February 3, 1936, a group burial insurance policy affecting George Walters, his wife, Mrs. Mae Walters, and his four children. The policy states that defendant, referred to therein as company,

"Does hereby agree, subject to the conditions below and on the reverse side hereof, each of which is hereby made a part of this policy, to pay to the Company's authorized Official Funeral Director, as specified herein, immediately upon receipt of due proof of death of the insured, made in the manner, to the extent and upon blanks required by the Company, the amount in funeral benefits set opposite said insured, in service and merchandise at the time of his death, provided, however, the applicant must be alive and in sound health and free from injury when this policy is delivered, and no liability is assumed by the Company for any accident occurring or illness contracted prior to the date of the actual issuance of the policy."

In the policy, following the provision just quoted, are the names of George Walters and Mrs. Mae Walters, whose ages are listed as fifty-nine and thirty-five, respectively, and opposite thereto is the following stipulation:

"Amount payable by the Company at its home office to the Company's authorized Official Funeral Director as a credit on any selection made at time of death, which amount is payable at the death of any person whose name appears opposite this clause, according to the stipulations as contained herein..................$250.00."

Other pertinent provisions of the contract are found in section 4, which read: "At the time of the death of the insured adult whose name appears on this policy, and evidence to the fact that the said insured is in good standing, the said Company will furnish for such adult a complete funeral service delivered within a radius of 75 miles of Shreveport, Louisiana, which may consist of embossed cloth casket with outside case, both made of cypress (a suit, a robe, dress or shroud, if desired), hearse service and funeral cars, and service which includes making all arrangements, conducting the funeral, transferring the remains, preparation and dressing of the body, (which may include embalming of the body if desired), obtaining of death and burial permits, use of funeral chapel, flower rack, folding chairs and other paraphernalia necessary for interment, inserting in newspaper the death notices, the furnishing of floral acknowledgment cards. The said service to be equivalent to the retail value of Two Hundred Fifty and No/100 .($250.-00) Dollars. (These benefits do not include cemetery fees or vaults)."

The insurance agreement designates Woodruff Funeral Service, Inc., Shreveport, La., as the authorized official funeral director.

On April 13, 1936, defendant sold and transferred some of its policies, including the one herein involved, to the Southern General Life Insurance Company, which assumed all liabilities and obligations thereunder.

George Walters died at the Charity Hospital in Shreveport, La., on November 13, 1936, and his body was delivered to the above-named authorized funeral director for the necessary burial preparation and appropriate interment. A death certificate was sent to the insurer.

All requisite premiums had been previously paid on the policy, and it was in full force and effect on the occurrence of the death. Notwithstanding this, Mrs. Walters was informed by the funeral director that the policy was invalid, and its representatives suggested that the body be buried in the pauper's field. Being undesirous of a burial of that kind for her husband, she sought funds from a source independent of the insurer, and was successful in securing the sum of $131.20. A funeral was then provided by said funeral director on the receipt by it of that amount.

Subsequently Mrs. Walters, in her individual capacity and on behalf of her minor children, instituted this suit against said Reliance Industrial Insurance Company, seeking judgment in the sum of $250, being the value of the service stipulated.

In its answer, defendant denies liability under the insurance agreement. It avers that the policy was obtained by decedent through fraud and misrepresentations regarding his age and the condition of his health at the time of its issuance. The Southern General Life Insurance Company was called in warranty. Defendant prayed for a rejection of plaintiff's demand, and further that if it be cast in this suit that it have a like judgment against warrantor. The warrantor joined defendant in urging the defense of fraud and misrepresentation, and asked that plaintiff's suit be dismissed.

A trial was had and there was judgment in favor of plaintiff and against the defendant, Reliance Industrial Life Insurance Company, in the sum of $131.20, with legal interest from judicial demand. There was also judgment in favor of said defendant against its warrantor, Southern General Life Insurance Company, in a like amount.

Plaintiff appealed from the judgment in so far as it rejected her demands for the amount claimed in excess of $131.20. Neither defendant nor warrantor appealed.

The defendant, however, answered the appeal, asking that plaintiff's demands be rejected in toto and, alternatively, if appellant's judgment be increased, that there be a similar increase in its judgment against warrantor.

Section 3 of Act No. 160 of 1934 is relied on in support of the defense that fraud was perpetrated by the decedent in obtaining the policy by his alleged misstatement of the condition of his health· in the application. The provisions of this section are:

"No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in 'the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove. provided."

The application, which was signed by decedent and is a part of the policy, propounds the question, "Are each of the applicants in sound condition mentally and physically?" An affirmative answer was given to this. Decedent also stated, in reply to an appropriate question, that he had never suffered from the various diseases, ailments, and infirmities named and listed in the application. Heart disease, to which his death was attributed, was not included in the list.

■ It is our belief that Mr. Walters, at the time of signing the application, was experiencing some ailment affecting his heart; but we are satisfied that there was no willful misrepresentation on his part or a concealment of facts as to his ill health, within the contemplation and intendment of the above quoted statutory provision. The trial judge, in his well-considered, written opinion, makes the following observations regarding the evidence in the case, which are in accord with our findings and conclusions:

"The statement of the physicians at the Charity Hospital filed in evidence fixes the cause of death as heart disease, or myocardial failure, and not of venereal origin. They testify that deceased said he had been sick for two or three years. That a doctor had told him that he, had a leaking heart, but that he had been able to work up to two or three months prior to his admission to the hospital on October 31, and that prior to that time it is possible that deceased did not consider his condition serious. They could not tell how long the syphilitic condition had existed. One doctor when asked how long prior to his death deceased would have known that his condition was serious, answered that he could not be accurate within a few months or a few years. In other words, while he undoubtedly was suffering from a leaky heart at the time he made the group application, it is not shown that he knew of its seriousness and wilfully and fraudulently withheld the information. Particularly is this true when the application itself omits heart disease entirely from the long list of ailments particularly inquired about."

Accordingly, we hold that the defense of fraud and misrepresentation has not been sustained.

■ The contention made that decedent misstated his age in obtaining the issuance of the policy is without merit. The application which he signed makes no reference to the matter of age.

Consideration is now given to the amount that plaintiff is entitled to recover herein. As before stated, she was awarded $131.20 by the district court, this being the amount which she obtained from a source other than the insurance herein involved and actually paid for the funeral that was furnished.

It is our opinion that plaintiff should have judgment for the amount claimed by her. The policy contemplated and stated that the insurer would pay the sum of $250 to its authorized funeral director as a credit on any priced funeral service that might be selected for decedent. There was guaranteed a complete service, such as the one described in the written agreement, equivalent to the retail value of $250. It is needless to say that, if the insurer and its authorized director had recognized the validity of the insurance contract, Mrs. Walters would have accepted at least the suggested service of the above-mentioned value. She would not have profited by doing otherwise, for there was no provision in the policy for the payment to her or to any one else of the difference between said amount and that of a less expensive funeral.

The fact that she was compelled to obtain other funds to pay for the funeral, after insurer's denial of liability, and that these were not equal to the guaranteed service value, cannot serve to reduce or affect insurer's obligation. Suppose the wife had been unable to secure any money, and of necessity her husband had been buried in a pauper's grave, would defendant be permitted to profit by her ill fortune and condition of poverty and escape liability altogether? We venture a negative answer.

The purpose of an industrial contract like the one under consideration is to make available to persons of moderate' means sufficient funds for a suitable and decent burial of a loved one at the time of his passing. The amount deemed to be necessary for such an occasion is decided upon by the contracting parties when the policy is issued, and usually it controls the fixing of the premiums that are thereafter to be periodically paid for a continuation of the insurance. In the instant case the funeral service contracted in decedent's behalf was of the value of $250, and the stipulated monthly premium was $1. All of the premiums had been paid, and the policy was valid and binding when the death occurred. The insurer should be compelled to discharge the obligation assumed by it.

The contention is advanced by defense counsel that, as this is a suit for breach of contract, compensable in damages, plaintiff is entitled to recover only the actual expense of decedent's funeral, which was $131.20; and that a suit for specific performance was necessary and should have been brought in order to obtain satisfaction under the policy provision stipulating a $250 funeral service. Certainly it would not have been proper or permissible to withhold interment of the remains for an indefinite period of time pending the determination of lengthy litigation involving a suit for specific performance. This contention, in our opinion, is without merit.

The judgment of the trial court as between the defendant and its warrantor cannot be disturbed by us. There was no appeal on defendant's part. It is true that it answered the appeal prosecuted by plaintiff; but this is unavailing in so far as its coappellee, the warrantor, is concerned. A judgment as between coappellees is not reviewable and is not subject to revision, amendment, or reversal by an appellate court. Consolidated Companies v. Haas

Land Company, 179 La. 19, 153 So. 6; Berthelot v. Fitch, 44 La.Ann. 503, 10 So. 867; Porche v. Lang, 16 La.Ann. 312.

Accordingly, the judgment is amended by increasing the amount awarded to plaintiff and against defendant to $250, and, as thus amended, it is affirmed. Defendant shall pay the cost of this appeal.