## HONGO v. NATIONAL LIFE & ACCIDENT INS. CO.

### No. 5769.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Rehearing Denied April 28, 1939.

Writ of Certiorari Denied May 29, 1939.

J. D. Rusca, of Natchitoches, for appellant.

John G. Gibbs, of Natchitoches, for appellee.

HAMITER, Judge.

A $300 endowment insurance policy was written by defendant on the life of Lillie Kay Hongo on October 21, 1935. No medical examination was given or required. The insured signed an application for its issuance on October 14, 1935. Zeno Hongo was named beneficiary.

Death occurred to the insured on August 14, 1936, and due proof thereof was furnished to defendant. All premiums had been fully paid.

The beneficiary was unable to obtain settlement under the policy and consequently brought this suit. He asks judgment for the above named principal amount.

Exceptions of no cause and no right of action were filed by defendant. They pre-

sented matters of defense and were properly overruled.

Defendant answered denying liability under the contract. It avers that the signed application of the insured contained false statements relative to her age and health; that such were wilfully made; and that they constituted a fraud on defendant and rendered the policy null and void. Alternatively, it pleaded that recovery should not exceed the amount of insurance which the premiums paid would have purchased at the insured's correct age.

A judgment for $207.70 was rendered in plaintiff's favor and defendant appealed.

The defense that the insured fraudulently secured the insurance is predicated on the provisions of section 3 of Act No. 160 of 1934. These are:

"No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove provided."

The charged fraud is not presumed and the burden of establishing it is with the insurer.

The assailed application is on a form prepared and regularly used by defendant. It bears the signature of the insured and contains numerous printed questions followed by answers thereto that were written with ink in longhand. The writing of these answers was performed by the insurer's agent who sold the policy in question. One of the pertinent questions is:

"Have you ever had heart disease, asthma, tuberculosis, cancer, ulcers, diabetes, fits, kidney disease, syphilis, paralysis, rheumatism, sciatica, vertigo, or any illness or disorder of the brain, lungs, spine or nervous system, or any disease not common to both sexes; or suffered the total or partial loss of a hand, foot, eye, or the use thereof? Are you deformed? Do you use intoxicating liquors, morphine, or other narcotics to excess?" The word "no" is found opposite it.

It is defendant's contention that the insured was suffering with both heart and kidney diseases at the time the application was signed; that she knew of this and wilfully and deliberately furnished false information relative thereto with a view of defrauding the company; and that the policy would not have issued if the correct condition of her health had been known.

The evidence discloses that the insured was visited by physicians, prior to her obtaining of the insurance in October, 1935, on the following dates and given treatments for the ailments mentioned in connection therewith: December 1, 1933, acute nephritis; November 24, 1934, high blood pressure; March 11, 1934, acute nephritis; March 19, 1935, hypertension; May 22, 1935, high blood pressure; May 30, 1935, high blood pressure; September 30, 1935, malarial fever. Nephritis is inflammation of the kidneys. Hypertension is an abnormally high tension, especially high blood pressure. According to the medical testimony, high blood pressure does not necessarily indicate an enlarged or diseased condition of the heart. The assured was confined to her bed on the above mentioned occasions, and she was paid sick benefits for a week during each period of illness under a policy carried by her with a company other than defendant.

No further illness appears to have affected her until March 30, 1936, or more than five months after the application's signing. However, from that time until her death in August, 1936, she was continuously being treated for heart and kidney diseases.

The evidence, according to our appreciation of it, does not reveal that she had experienced a disease of the heart prior to the time that she gave the answers attributed to her. We do find, as above shown, that the kidneys were affected; however, Dr. Reed, one of the two attending physicians, states that he did not personally inform her as to that condition, although he did tell her family, and that if he had endeavored to explain the meaning of the medical terms to her he thought she would not have understood. The other professional attendant, Dr. Phelps, was unaware of the kidney condition.

In view of the foregoing discussed evidence, we are unable to hold that the insured wilfully and fraudulently withheld from the defendant company information regarding any previously experienced heart and kidney diseases. Walters v. Reliance Industrial Life Ins. Co., La.App., 180 So. 880.

■ Also, we are not convinced that there was a wilful misstatement of insured's age. The application states her age next birthday to be 37. This was written by the insurance agent, as before stated. He did not give testimony in the case, although his employment with the company still existed. Applicant, who was a negro woman, had been observed by this agent almost weekly during a period of at least a year prior thereto, at which times she paid to him premiums on a policy written by his company on the life of a member of her household. Also, defendant's superintendent was present with the agent when the application was signed. Each of these representatives had an interest as well as an opportunity to observe her and ascertain the correct age. Sawyer v. Liberty Industrial Life Ins. Co., La.App., 171 So. 415. This charge of fraud is not clearly established.

■ It appears that the trial judge found that the insured's correct age was 44. The evidence seems to sustain this finding. The weekly premium that she paid, or twenty-seven (27) cents, would purchase $207.70 insurance at that age. It was for that amount that judgment was correctly rendered in favor of plaintiff.

The judgment is affirmed.