SAMUEL, Judge.
These two consolidated suits for personal injuries and other damages arise out of the same automobile accident which occurred on December 1, 1963. The three plaintiffs, all of whom sustained injuries in the accident, are the driver and occupants of one of the automobiles involved. Mr. and Mrs. William D. Montero, husband and wife, are plaintiffs in one of the cases; he sues for deductible property *878 damages to his vehicle, his own personal injuries, medical expenses for himself and his wife, and loss of wages; Mrs. Montero sues for her personal injuries. Plaintiff in the other case is Mrs. Mabel D. Gainey, Mrs. Montero’s mother, who sues for her personal injuries and medical expenses. Defendants in both cases are Charles E. Gaconi, driver of the other vehicle involved, and his liability insurer, Lumber Mutual Fire Insurance Company of Boston.
The two cases also were consolidated for trial in the district court. After trial two judgments were rendered in favor of plaintiffs and against the defendants awarding: (1) Mr. Montero $3,000 for his personal injuries, $244 for medical expenses, $100 for deductible property damages and $560 for loss of wages; (2) Mrs. Montero $250 for personal injuries; and (3) Mrs. Gainey $600 for personal injuries and $15 for medical expense. Defendants have appealed from both judgments. In this court they concede liability and make only two contentions: (1) all awards for personal injuries are excessive; and (2) the award to Mr. Montero for loss of wages is erroneous and should be reversed.
The evidence pertinent to the issues before us consists of testimony given by: the three plaintiffs; their treating physician, Dr. F. J. Padua, a physician and surgeon engaged in the general practice of medicine; Dr. George C. Battalora, an orthopedic surgeon who examined Mr. Montero on behalf of the defendants; and Edward E. Walker, personnel manager of Mr. Montero’s employer at the time of the accident. With the exception of Mr. Walker, who testified on behalf of the defendants, all of these witnesses were called by the plaintiffs.
Mrs. Montero testified she felt no ill effects from the accident until she was at home approximately two hours after the collision had occurred. Then she became, as she expressed it, “all tight and tense” in her upper back area. Her back problem, tenseness and nervousness continued for five days to a week during which apparently she remained at home lying down “constantly”. She was unable to return to her part-time work as a gift wrapper during the pre-holiday season. However, after one week the pain and nervousness subsided and she has had no further trouble with her back. She saw Dr. Padua on only one occasion.
Dr. Padua examined Mrs. Montero on December 3, two days after the accident. She complained to him of pain in the upper back area and in the lower extremities. He found some tightness of the scapula muscles and bruises over her lower extremities. He diagnosed her condition as contusions of the lower extremities and upper back area. He felt she would have no permanent residual effect from the accident.
Mrs. Gainey testified she had been seated on the front seat of the car next to the right door at the time the collision occurred. Her right hip struck the door knob and, apparently as a result of attempting to brace herself, she experienced what she described as a “terrific” pain in the arm. She became extremely nervous and had considerable pain in the arm and hip for approximately fifteen days following the collision when she gradually began feeling better. Since shortly thereafter she has experienced no further pain or trouble. She saw Dr. Pa-dua on the day of the accident and on one other occasion. He prescribed medication for her condition.
Dr. Padua testified he saw Mrs. Gainey on the date of the accident and on one other occasion two days thereafter. He found tenderness to palpation in the muscles of the right shoulder; there were no obvious bruises or swelling nor was there any muscle spasm or limitation of motion of the shoulder area. Her blood pressure was elevated but the elevation may or may not have been related to the accident. He diagnosed Mrs. Gainey’s condition as a contusion of the right shoulder and gave her tranquilizers and muscle relaxants. In Dr. *879 Padua’s opinion she would have no permanent residual from the accident.
Mr. Montero testified: Following the accident he was very nervous. The next morning, December 2, despite feeling stiff and sore, he returned to his work at a dairy which involved the lifting of 32 pound milk cases. Unable to do his work because of the stiffness and pain in his back, he left work and that evening saw Dr. Padua under whose care and treatment he remained for about eighteen days. The treatment consisted of medication and heat. ' Shortly thereafter he returned to work at the dairy because of his financial condition; he needed his salary to support himself, his wife and his two children. Although not discharged, he discontinued the treatment by Dr. Padua because he did not feel the heat therapy was helping him and the medical bills were becoming too high for him to pay. He continued to work at the dairy until March 21, 1964, always working with difficulty and in pain even though, as a result of assistance given to him by fellow employees, he was doing lighter work than before the accident. On that date he left his job and looked for lighter work because he was unable to perform his duties. He was unable to find other work he could do until June 10, 1964 when he obtained employment with U. S. Gypsum. Performance of his work at U. S. Gypsum was difficult and painful but he forced himself to carry out those duties because he needed the salary. At the time of trial, approximately three years after the accident, his back continued to give him trouble on some occasions.
Dr. Padua first saw Mr. Montero on December 2, the day following the accident. He found some muscle spasm and limitation of motion on forward bending together with tenderness to palpation over the lumbo-sacral area. He was of the opinion that Mr. Montero had sustained an acute lumbo-sacral sprain. He advised bed rest, medication in the form of muscle relaxants and for relief of pain and started deep heat therapy treatment. He saw Mr. Montero and treated him on thirteen occasions, almost daily from December 2 through December 20. At the time of the last visit on December 20 he felt Mr. Montero had improved but he was also of the opinion that the return to work so soon after the occurrence of the injury had aggravated the condition. He felt Mr. Montero should not return to full manual labor. He never discharged Mr. Montero.
Dr. Battalora examined Mr. Montero on May 11, 1964, approximately six months after the accident. At that time he complained of pain in the lumbo-sacral junction area “now and then” on lifting. This doctor found. spasm in the lower back muscles which he felt was postural and unrelated to trauma. Extension of the spine was slightly limited and there was some tenderness over the left posterior superior iliac spine. X-rays were negative. It was Dr. Battalora’s opinion that Mr. Montero had sustained a low back strain and was having recurrent, episodes of low back pain signs. He felt that a proper exercise program would clear up the symptoms in six to eight weeks. He also felt that at the time of the examination Mr. Montero could perform laborious work which involved the lifting of 32 pound crates.
We are satisfied, as was the trial judge, that Mr. Montero suffered pain over a period of several months and on some occasions continued to have trouble even to the time of trial. We note particularly that the specialist who examined him on behalf of defendants more than five months after the accident found he had not recovered and needed additional treatment which should last for six to eight weeks. And while it is true that the injuries sustained by Mrs. Montero and Mrs. Gainey were not severe or serious, it is also true that the trial court awards for those injuries were small.
Under all of these circumstances, and after our examination of the cases relative to quantum cited by both counsel, we are of the opinion that the awards of *880 $3,000 to Mr. Montero, $250 to Mrs. Mon-tero and $600 to Mrs. Gainey for their personal injuries are not excessive to the extent that any of them constitutes an abuse of the “much discretion” vested in the trial court in assessing damages. Accordingly, we will not disturb the awards. See Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Ballanga v. Hymel, 247 La. 934, 175 So.2d 274; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
We now address ourselves to defendants’ second contention, that the award to Mr. Montero for loss of wages is erroneous and should be reversed.
Mr. Montero testified he worked for the dairy at a salary of $75 per week at the time of the accident and missed one and one-half weeks from work following the accident. In February of the following year his salary was raised to $80 per week. He continued working until March 31, 1964 only because of financial necessity and at that time, because of pain and inability to perform his tasks, he left that employment to seek lighter work. He was unable to find such other work until June 10, 1964 when he took a job with U. S. Gypsum. In his petition he claims loss of wages in the sum of $112 from December 1, 1963 to December 11, 1963 and $750 from March 31, 1964 to June 10, 1964, a total of $862. As we have said, the award for loss of wages was $560. '
Mr. Edward E. Walker, personnel manager of Mr. Montero’s employer at the time of the accident and a witness called by the defendants, testified: the payroll records of his company revealed that Mr. Montero was employed by the dairy from November 5, 1963 until April 22, 1963 when he left that employment; during that time he missed only three days pay in December, 1963 and January, 1964; on February 13, 1964 his salary was raised from $75 to $80 per week.
Our understanding of the record is that the trial court accepted the testimony of Mr. Walker relative to the time the employment with the dairy was terminated and also found Mr. Montero was unable to perform his work with the dairy from April 22, 1964 to June 10, 1964, a total of seven weeks, because of the injuries he suffered in the accident; the award of $560 for loss of wages represents loss of seven weeks at $80 per week. As we are in agreement wtih that finding, and as Mr. Montero makes no complaint about any additional loss of wages prior to April 22, 1964 (he has not answered the appeal and in this court seeks only an affirmation of the judgment appealed from), we will affirm the trial court judgment as to loss of wages.
For the reasons assigned, the judgments appealed from are affirmed.
Affirmed.