215 So.2d 676 (1968)
Victor J. BARROIS and Mildred D. Barrois Individually and in behalf of their minor son, Victor Joseph Barrois
v.
Rosario NOTO, Allstate Insurance Company and New Orleans Public Service, Inc.
Rosario A. NOTO, Individually and as the Administrator of the estate of his minor child, Rosario R. Noto
v.
Louis W. CROWELL and New Orleans Public Service, Inc.
Nos. 2958, 2959.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1968.
Writ Refused November 18, 1968.
On Rehearing December 2, 1968.
Writ Refused January 24, 1969.
*677 Garland R. Rolling, Metairie, for Victor J. and Mildred D. Barrois, plaintiffs-appellees.
George J. Kambur, New Orleans, for Rosario Noto, plaintiff-appellant.
W. W. Ogden, A. R. Christovich, Jr., C. B. Ogden, II, and Charles A. Bristow, New Orleans, for New Orleans Public Service, Inc., defendant-appellee.
Sessions, Fishman, Rosenson & Snellings, James C. Murphy, Jr., New Orleans, for Allstate Ins. Co., defendant-appellant.
Before REGAN, SAMUEL and HALL, JJ.
SAMUEL, Judge.
These two suits were consolidated for trial in the district court and for argument in this court. They arise out of an April 16, 1966, intersectional collision between an automobile and a bus at Caffin Avenue and Galvez Street in the City of New Orleans.
Plaintiffs in suit No. 2,958 of our docket are Victor J. and Mildred D. Barrois, individually and on behalf of their minor son, Victor Joseph Barrois, a passenger in the bus who was injured in the accident. The petition alleges the accident was caused by the negligence of both drivers and recovery is sought against all defendants, in solido, for personal injuries and medical expenses. The defendants are Rosario Noto, the driver of the automobile, Allstate Insurance Company, liability insurer of the Noto vehicle, and the bus company, New Orleans Public Service, Inc. An exception of improper party defendant was filed by the driver Noto, a minor, and plaintiffs voluntarily dismissed that defendant from the suit. In answer to the petition Allstate filed a general denial; New Orleans Public Service denied negligence on the part of its driver and averred the accident had occurred *678 solely as a result of the negligence of young Noto, including pre-emption of the intersection by the bus and Noto's disregard of that vehicle's consequent right-of-way as a part of his alleged negligence.
Suit No. 2,959 of our docket was brought by Rosario A. Noto, owner of the automobile and father of its driver, individually and on behalf of his minor son, against Louis W. Crowell, driver of the bus, and his employer, New Orleans Public Service, for damages to the automobile and for the boy's personal injuries and consequent medical expenses. Defendants' answer asserts the same defenses New Orleans Public Service urged in the Barrois suit and alternatively pleads contributory negligence.
After trial the district court concluded the sole proximate cause of the accident was the negligence of young Noto in driving at an excessive speed. Accordingly, the suit brought by the elder Noto was dismissed. In the other suit the claim of Mildred D. Barrois, the mother of the minor, was dismissed as of nonsuit and there was judgment in favor of the remaining plaintiff, Victor J. Barrois, individually and on behalf of his minor son, against Noto's insurer, Allstate, in the amounts of $1,000 for the boy's injuries and $180 for medical expenses, a total of $1,180; the claim against New Orleans Public Service was dismissed.
Noto has appealed from the judgment dismissing his suit (No. 2,959). Allstate has appealed from the judgment casting it in the Barrois suit (No. 2,958). Barrois has not appealed; however, he has answered Allstate's appeal in the Barrois suit seeking amendment of the judgment in that suit to hold the other defendant, New Orleans Public Service, solidarily liable with Allstate and, alternatively, that the judgment be affirmed.
These facts are not disputed: Caffin Avenue runs in a north-south direction between the river and the lake. It measures about 50 feet from curb to curb. The paved part of the roadway is approximately 28 feet in width and the remaining area is shelled to form shoulders about 11 feet wide on either side of the paving. Traffic on Caffin moves in two directions; one lane accommodates northbound traffic, i. e., towards the lake; the other accommodates southbound traffic, i. e., towards the river. Galvez Street is perpendicular to and crosses Caffin Avenue. Where they intersect Caffin traffic has the right-of-way, vehicular movement on Galvez being regulated by a stop sign. There is a bus stop on Galvez approximately 10 or 15 feet from the Caffin curb and the stop sign is about 5 feet from that curb. The accident happened during the afternoon of a clear day. Young Noto was driving on Caffin Avenue and the bus was traveling on Galvez. As the two vehicles approached the intersection the bus was to the left of the automobile driver and the automobile was to the right of the bus driver. The front of the Noto car, a 1959 Ford, was heavily damaged in the collision; the bus was lightly damaged in the area of its rear right wheel.
Almost all other facts are disputed as is apparent from the following accounts given by the principals involved.
Young Noto testified that on the day of the accident he left his home shortly before 4 p. m. to buy a dome light for the automobile. He approached the Galvez intersection after traveling approximately one mile on Caffin. When he was about one-half block from the intersection he saw the bus stopped at the bus stop on Galvez. He also saw people at the bus stop, but did not know whether they were boarding or leaving the bus. He then looked in the opposite direction on Galvez and, seeing nothing approaching, continued his forward progress at approximately 25 miles per hour. When he was 30 feet from the intersection the bus suddenly came out in front of him. He unsuccessfully attempted to swerve to his left to avoid the collision. He places the point of impact slightly left of the center line of the paved part of Caffin Avenue.
The bus driver, Crowell, gave this account: "Well, I came up to Galvez and *679 Caffin, and I stopped just a foot or so back of the stop sign to leave off passengers. After I left off the passengers there, the traffic was clear to the left. I looked to the left. Well, to get a clear view of the right I moved up about, say, about three to five feet and stopped over and looked to my right. I could see a block, a block and a quarter. There wasn't nothing coming toward me and after I seen it was clear I started off, going over the street. They had people on both sides walking across, and I had to slow up more; and I heard some brakes screeching and I kind of glanced to my right, and just about that time, a couple of seconds, it hit the back wheel of the bus; and I moved, I guess about three feet when I stopped."
Crowell first stated he moved forward 3 to 5 feet from where the bus had been stopped to discharge passengers and stopped again before attempting to cross Caffin. On cross examination, he pinpointed the spot where he finally stopped as being the edge of the paved portion of Caffin. Considering the shell shoulder is 11 feet wide and the bus stop itself was 10 to 15 feet from the uptown river curb, the bus traveled a distance of between 21 and 26 feet before stopping if the driver's second statement is true.
The bus driver's view to his right was blocked from the point where he discharged passengers. But even though he moved his bus forward either 5 feet as he stated the first time, or 21 to 26 feet as he estimated during cross examination, he still failed to see the Noto car approaching. Crowell said he could see for 1 to 1¼ blocks to his right after stopping at the beginning of the paving. But from his elevated position he should have had an unobstructed view to his right. As shown by photographs introduced in evidence, Caffin is a straight roadway for many blocks in the direction from which the Noto vehicle approached the Galvez intersection. We know of no reason why the bus driver could see no further than 1 to 1¼ blocks to his right on Caffin.
Next, Crowell started his bus across the intersection at a speed he estimated to be between 5 to 7 miles per hour and traveled a total of 29 feet before being struck between the right rear door and wheel by plaintiff's automobile. The distance traveled by the bus is computed this way: it had traveled 11 feet of the intersection before allegedly stopping to observe traffic approaching from the right; after being hit it moved forward 3 feet and finally stopped in the intersection with its front some 7 feet from the downtown river curb; thus, by subtracting 21 feet from 50 feet, the width of Caffin from curb to curb, the bus moved 29 feet from its stopped position to the point of impact if this testimony of the bus operator is correct.
Crowell said plaintiff's car did not move after it collided with the bus. The automobile's tire marks on the road indicated to Crowell the plaintiff driver had attempted to swerve to the left to avoid the bus. Crowell gave no testimony relative to the speed of the automobile; he stated he did not see the car prior to the collision.
The most spectacular account of the accident was given by young Barrois, the injured bus passenger. Some portions of his version are beyond belief. Barrois was a 16 year old eighth grade student when the accident occurred. He said a driver's license had been issued to him about one week before the accident even though he did not know how to drive. According to his testimony he first saw Noto's car when it was two car lengths from Galvez Street coming at a speed of between 38 to 40 miles per hour. On cross examination he changed this story. Then he said when the front of the bus was in the middle of the intersection he first saw the Noto vehicle approaching from a distance of one block away at a high rate of speed he determined to be between 38 and 40 miles per hour. How could he be so accurate as to speed? Because of the smoke pouring from the Noto car while it traversed the "bumps" on Caffin Avenue. Young Barrois admitted he had seen the same amount *680 of smoke pouring from old cars when traveling at a speed of five miles per hour. According to him, the Noto car ultimately hit the bus between the right side door and rear wheel and then bounced back from the bus some 10 to 15 feet. Although he rides busses every day, he could not estimate the speed of the bus in which he was a passenger. Initially he was asked if the bus crossed Caffin at between 10 and 12 miles per hour. Agreeably he said yes. But upon being questioned by the court he admitted he did not know how to estimate the speed of the bus.
The only significant fact testified to by Barrois which he did not later contradict was that the bus driver failed to stop for the Galvez Street stop sign after leaving the bus stop.
The sole disinterested eye witness to appear was Lois Rickman, a bus passenger who was called by New Orleans Public Service and Crowell, the bus driver. This witness said the bus driver failed to stop in obedience to the stop sign before entering the Caffin Avenue intersection. According to her, after discharging his passengers at the bus stop the bus pulled off and continued across the street until it was hit. She estimated the bus was traveling between 15 and 20 miles per hour when the collision occurred. As was the case with the bus driver, she was unable to testify relative to the speed of the Noto automobile for the reason that she did not see the car prior to the impact.
The only part of Barrois's testimony we find credible is that the bus driver disregarded the stop sign facing him before he entered the intersection. We do not reach this conclusion because we think this segment of his evidence is in itself reliable. Rather, we are impressed with the account given by Lois Rickman, the disinterested New Orleans Public Service and Crowell witness who, as has been pointed out, also stated the bus continued on Galvez without stopping after it had discharged its passengers. The bus driver was the only witness who testified the bus stopped for the stop sign.
The Barrois and Rickman statements to the effect that Crowell disregarded the stop sign support young Noto's version of how the accident occurred. It will be recalled he stated that when he was one-half block away the bus was stopped. He knew that a stop sign faced Galvez traffic; therefore, the sudden movement of the bus into the intersection was unexpected and he did not see it until he was 30 feet from the bus. The fact that the Noto car was only 30 feet from the bus when it pulled into the intersection is supported by the first version of the accident given by the injured passenger, Barrois.
In our view, the credible evidence preponderates to the effect that the defendant driver disregarded a stop sign when he drove the bus into the intersection. In so doing he breached a duty imposed on him by law to yield to traffic moving on the favored street until he could ascertain it was safe to cross.
But even if we would accept the bus driver's unsupported testimony that he stopped at the paved edge of Caffin before attempting to cross, we would still reach the same conclusion, that he was guilty of negligence which proximately caused the accident. Any other result requires our accepting the apparent impossible as fact.
As the bus driver tells it, the roadway in the direction from which the Noto car approached was clear for 1 and ¼ blocks; the Noto car was not in sight. If this were true (and we do not believe it is correct because traffic on Caffin could be observed in that direction for a much greater distance than 1 and ¼ blocks), we would also have to supply the presumption that the Noto car traveled much more than 1 and ¼ blocks at an excessive speed over a badly rutted street in the time the bus moved only 29 feet.
Relying on one of young Barrois' accounts leads to a more incredible result. According to him, the bus was in the middle of the intersection when he first saw the Noto car one block away traveling at a speed remarkably estimated at between 38 *681 and 40 miles per hour. If this were true, we would have to conclude the bus moved only ten feet in the time it took young Noto to traverse the intervening block.
To us it is inconceivable that the Noto car could have traveled more than one block while the bus moved only a relatively few feet. We take the same view of this type of testimony as did this Court in Moreau v. Corley, 212 So.2d 566, handed down this day, and in Rhodus v. Allstate Insurance Company, La.App., 192 So.2d 226. In Rhodus the Court was asked to supply presumptions of incredible speed from testimony that one car only traveled several feet while the other covered a distance of one-quarter block to crash into the other. In discussing the testimony we said in part:
"* * * Mrs. Alfonso's testimony that she saw the other car one-quarter of a block away is just as incredible and unbelievable as that of young Rhodus. It is inconceivable that the Dombourian car traveled a distance of one-quarter of a block in the short space of time consumed by Mrs. Alfonso to barely start the arc of her right turn. * * *"
We conclude the Noto car was there for the bus driver to see had he observed traffic conditions on Caffin Avenue before crossing. Whether he saw the car or not, he should have seen it and his failure to do so constitutes negligence. Jackson v. Cook, 189 La. 860, 181 So. 195; Moreau v. Corley, supra; Rhodus v. Allstate Insurance Company, supra.
The facts of the instant case preclude an application of the doctrine of pre-emption. As we stated in Musco v. General Guaranty Insurance Company, La.App., 181 So.2d 881:
"Before a motorist successfully can rely on the doctrine of pre-emption he must show he entered the intersection at a proper speed and sufficiently in advance of the car on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle; entry into the intersection at the same time or just a fraction of a second ahead of the other vehicle does not create a pre-emption. Scott v. Glazer, La.App., 164 So.2d 185; Glass v. Toye Brothers Yellow Cab Company, La.App., 160 So. 2d 329; Bell v. Duplessis, La.App., 150 So.2d 114."
Having concluded the bus driver was negligent, either in disregarding the stop sign or in failing to see what a prudent driver should have observed, or both, and that his negligence was a proximate cause of the accident, we must next consider whether young Noto was guilty of any negligence which contributed to the occurrence of the accident.
Because he was driving on a favored street, he is not to be held to as great a degree of care as was the bus driver. The rights of the motorist on a favored street were succinctly stated in Koob v. Cooperative Cab Co., 213 La. 903, at page 909-910, 35 So.2d 849, at page 851:
"The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. See Termini v. Aetna *682 Life Ins. Co. et al., La.App., 19 So.2d 286; Kientz v. Charles Denery, Inc., 209 La. 144, 24 So.2d 292; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145. See also Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291; 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., sec. 1032, pp. 216, 217."
See also Henderson v. Central Mutual Insurance Co., 238 La. 250, 115 So.2d 339.
It will be recalled Noto testified he saw the bus stopped when he was ½ block away. After he looked in the opposite direction for approaching traffic on Galvez, and when he was 30 feet from the corner, the bus suddenly pulled in front of his car. There is no circumstance described in the record which would have timely warned him the bus driver would disregard the stop sign; therefore, we find no negligence in his action in proceeding toward the intersection without slowing his vehicle.
The trial court found young Noto guilty of negligence solely on the basis of excessive speed. However, a careful review of the record discloses no credible evidence to support that finding. Barrois, the inexperienced driver who testified as to the speed of the automobile, was the only witness to contradict young Noto's testimony that the latter was driving at 25 miles per hour. And we must reject that portion of the Barrois testimony for the reasons discussed previously.
The only other basis upon which the trial court determined Noto was traveling at an excessive speed was the heavy damage to the youth's automobile. It was stipulated by the litigants that it would have cost $450 to repair the car. But we cannot say the damage could not have resulted from a speed of 25 miles per hour on the part of the automobile.
Physical damage alone, unsupported by any competent testimony to relate the extent of the damage to the speed of the vehicle, does not support a presumption that the damaged vehicle was speeding. As we said in Liddell v. New Orleans Public Service, Inc., La.App., 128 So.2d 80, 87:
"The testimony and photographs do show a tremendous amount of damage to the plaintiff automobile and considerable damage to the bus. But we are at a loss as to what this proves in connection with excessive speed by the automobile. There is no testimony in the record, by qualified experts (if any such there be) or otherwise, from which we could draw any reliable conclusion as to what amount of speed is likely to cause what amount of damage."
In our view the record does not support a conclusion that young Noto was guilty of any negligence. There is contradictory evidence as to the time the accident occurred. Defendants would have it that the accident occurred just before 4 p. m. while Noto states it happened shortly after 4 p. m. The intersection is within a school zone and defendants imply that even if Noto was driving at 25 miles per hour he was negligent in violating a city ordinance by exceeding a 15 mile-per-hour school zone limit in effect shortly before 4 p. m. when they contend the accident happened. The limit in question is not in effect after 4 p. m.
In the absence of any showing that young Noto's driving in excess of 15 miles per hour was a traffic violation that caused or contributed to the occurrence of the accident, and the record contains no such showing, we think it is unimportant whether the collision happened a few minutes before or after school zone time expired. The trial court made the same comment.
As a result of the accident young Noto sustained a laceration of the lower lip and right thigh and a contusion of the right leg above the knee. His most serious injury was a cervical sprain which caused substantial pain for two months and required medical treatment for a period of four months after the accident. He was treated by his doctor approximately 25 times *683 and missed one and a half to two months of school as a result of the accident. At the time of his discharge he still experienced some incidents of neck pain which his doctor anticipated would persist for several months thereafter. We are of the opinion an award of $3,000 is sufficient to compensate young Noto for his pain and suffering. See Winfree v. Consolidated Underwriters, 246 La. 981, 169 So.2d 71; Montero v. Gaconi, La.App., 207 So.2d 877.
In addition, the elder Noto is entitled to a judgment in the total amount of $728 for special damages, i. e., $278 for proven medical expenses plus $450, the stipulated estimate of damages to the Noto car. And in view of the fact that we have found young Noto was not guilty of any negligence we must reverse that part of the judgment in the Barrois suit which awards damages in favor of Barrois against the liability insurer of the Noto automobile, Allstate.
Finally, we consider the effect of the Barrois answer to Allstate's appeal in the Barrois suit. As we have pointed out, in that suit the plaintiff Barrois sought judgment against the two defendants, Allstate and New Orleans Public Service, in solido; the trial court judgment awarded him damages only against Allstate and dismissed New Orleans Public Service from the suit; only Allstate has appealed from that judgment; Barrois did not appeal, but he did file an answer to Allstate's appeal in which he prays that the judgment be amended to hold New Orleans Public Service solidarily liable with Allstate and, alternatively, that the judgment be affirmed.
As Barrois did not appeal, the question presented is whether his answer to Allstate's appeal brings before this court New Orleans Public Service for review of that part of the judgment which dismissed the suit as to that defendant. Regretfully, our answer must be in the negative. We say regretfully because from our appreciation of the record it is quite clear Barrois should recover against New Orleans Public Service.
Our settled law prior to the enactment of the present Code of Civil Procedure was that by means of an answer to an appeal an appellee could have the judgment appealed from modified, revised or reversed only as between himself and the appellant; the appeal brought up the judgment for review only insofar as the appellant was concerned; and the judgment could be modified, revised or reversed as between appellees only by means of an appeal. Placid Oil Co. v. North Central Texas Oil Co., 206 La. 693, 19 So.2d 616; Coleman v. Cousin, 128 La. 1094, 55 So. 686; Laloire v. Wiltz, 31 La.Ann. 436; Baxter v. Texas & Pacific Railway Company, La. App., 102 So.2d 97; Succession of Jackson, La.App., 77 So.2d 194; Lanza v. Metcalf, La.App., 25 So.2d 453; Walters v. Reliance Industrial Life Ins. Co., La.App., 180 So. 880; Boutte & Courrege v. Derokay, La. App., 168 So. 39.
We are satisfied the present Code of Civil Procedure makes no change in this rule. See Lomenick v. Hartford Accident and Indemnity Co., La.App., 189 So.2d 731; 25 La.L.Rev. 447-48. In our opinion, LSA-C.C.P. Art. 2133, which is concerned with the answer of an appellee, makes no provision indicating otherwise. In addition the legislative intent not to change the rule is shown by LSA-C.C.P. Art. 2087, as amended by Act 92 of 1962, and the comments thereunder. That article provides for the delay for taking a devolutive appeal. The only change made by the 1962 amendment was the addition of the present last paragraph, which reads as follows:
"When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised, or reversed as to any other appellee, may take a devolutive appeal therefrom, and furnish the security therefor, within the delays allowed in the first paragraph of this article, or within ten days of the granting of the first devolutive appeal in the case, whichever is later."
*684 As shown by the 1962 Comment (c) appearing under the article as amended, the rule we have just set forth relative to the necessity of an appeal in order to obtain relief as between appellees is recognized as being the law and the above quoted last paragraph was added solely for the purpose of protecting an appellee from the effect of that rule in cases involving three or more parties where a devolutive appeal is taken on the last day. There was, of course, no need to amend the article relative to the delay for taking a suspensive appeal (LSA-C.C.P. Art. 2123) because the delay for taking that appeal is much shorter than the one for taking a devolutive appeal.
Accordingly, in the instant case we must and do hold that New Orleans Public Service is not before us insofar as the plaintiff Barrois is concerned; that part of the judgment appealed from which dismisses New Orleans Public Service from the Barrois suit is now final.
We are in agreement with the conclusion reached by our brothers of the Third Circuit in Howard v. Insurance Company of North America, La.App., 159 So.2d 560, a case directly in point which reaches the same result we do. We are also aware of Fussell v. United States Fidelity and Guaranty Co., La.App., 153 So.2d 911, handed down by our brothers of the First Circuit, which is also directly in point and holds to the contrary.
For the reasons assigned:
The judgment appealed from in the matter entitled "Victor J. Barrois and Mildred D. Barrois, individually and in behalf of their minor son, Victor Joseph Barrois v. Rosario Noto, Allstate Insurance Company and New Orleans Public Service, Inc.", No. 2,958 of our docket, is reversed only insofar as it casts Allstate Insurance Company in damages and it is now ordered, adjudged and decreed that there be judgment in favor of the defendant, Allstate Insurance Company, and against the plaintiff, Victor J. Barrois, individually and on behalf of his minor son, Victor Joseph Barrois, dismissing the said plaintiff's suit as to that defendant. In all other respects the judgment appealed from is affirmed; costs in this court to be paid by Victor J. Barrois.
The judgment appealed from in the matter entitled "Rosario A. Noto, individually and as the administrator of the estate of his minor child, Rosario R. Noto v. Louis W. Crowell and New Orleans Public Service, Inc.", No. 2,959 of our docket, is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Rosario A. Noto, individually and as the administrator of the estate of his minor child, Rosario R. Noto, and against the defendants, Louis W. Crowell and New Orleans Public Service, Inc., in solido, in the full sum of $3,728, together with legal interest from date of judicial demand until paid; all costs in both courts to be paid by the defendants, Louis W. Crowell and New Orleans Public Service, Inc.
Reversed.

ON REHEARING.
In this matter we granted a rehearing limited to the question of whether plaintiff is now entitled to a judgment against the defendant New Orleans Public Service, Inc., i.e., whether plaintiff's answer to Allstate's appeal brings New Orleans Public Service before this court for review of that part of the judgment which dismissed plaintiff's suit as to that defendant. We granted the limited rehearing because the question had not been raised by counsel and had not been argued before us.
A reconsideration and analysis of the question convinces us that the original opinion and decree are correct and should be reinstated.
Accordingly, our original opinion and decree are reinstated as the final judgment of this Court.
Original decree reinstated.