234 So.2d 763 (1969)
Melroy McCROSSEN, individually and on behalf of his minor son, William V. McCrossen
v.
Michael J. BIESZCZARD, Ernest S. Besnard, Globe Indemnity Company and Lumbermens Mutual Casualty Company.
No. 3536.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1969.
On Rehearing April 6, 1970.
*765 Frederick J. Gisevius, Jr., Robert F. Shearman, John H. Brooks, Thomas E. Johnson, Jane Gisevices, New Orleans, for plaintiff-appellant.
Bernard, Micholet & Cassisa, Malcolm B. Robinson, Jr., New Orleans, for Michael J. Bieszczard and Globe Indemnity Co., defendants-appellees.
Hammett, Leake & Hammett, Gordon F. Wilson, Jr., New Orleans, for Ernest S. Besnard and Lumbermens Mutual Cas. Co., defendants-appellees.
Before YARRUT, SAMUEL and CHASEZ, JJ.
YARRUT, Judge.
Plaintiff, a guest passenger, has appealed a judgment awarding him $9,500.00 for multiple injuries he incurred in an intersectional collision. Joined as Defendants were both drivers and their liability insurers.
After a lengthy trial, the lower court concluded the accident was the result of the negligence of Michael J. Bieszczard and rendered judgment against him and his insurer, Globe Indemnity Company. The judgment also limited the liability of Globe Indemnity Company to the limits of its liability policy, and rejected Plaintiffs' demands against Ernest S. Besnard and his insurer, Lumbermens Mutual Casualty Company.
Originally, Melroy McCrossen was named Plaintiff. He filed suit on behalf of his son William, because he was then a minor. After this matter was submitted in the Trial Court, the father died and the present Plaintiff, who by this time had attained majority, was substituted to prosecute his own claim for personal injuries. Substituted to pursue the claim for special damages filed by Melroy McCrossen on his own behalf were his widow and children. From the Trial Court judgment only the Plaintiff, William McCrossen, has appealed.
In brief, counsel for Defendants enumerate five issues they contend must be resolved, particularly the question whether either or both drivers were negligent. These questions present themselves for determination by Plaintiff's appeal. The other issues are those that only could have been brought before us if Defendants Bieszczard and his insurer had either appealed directly or filed an answer to Plaintiff's appeal. See Barrios v. Noto, La.App., 215 So.2d 676.
Thus the questions before us are: (1) Were the drivers of both cars concurrently negligent? and (2), is the award adequate?
The accident happened at 5:30 p.m. on February 26, 1963, at the intersection of Veterans Highway and Transcontinental Drive, in Jefferson Parish. Veterans Highway is a major east-west traffic artery which, at the time of the accident, had two eastbound and two westbound lanes. The highway is divided by a drainage canal. Where Transcontinental Drive crosses Veterans Highway a bridge spans the canal between the divided roadways. Traffic entering Veterans Highway from the bridge is regulated by a "Yield Right-of-Way" sign.
When the Bieszczard vehicle was attempting to cross Veterans Highway and proceed in a southerly direction on Transcontinental Drive, it was struck in the middle of the right side by another car moving eastward on Veterans Highway. The point of impact was fixed at approximately the center line dividing the eastbound lanes.
Three witnesses described in detail the events leading up to the collision. Although Plaintiff himself was questioned about the accident, it is apparent that he recalls no significant facts that would aid the court in fixing responsibility.
Malcolm Besnard, driver of the car in which Plaintiff was a guest passenger, testified he was driving eastward on Veterans Highway, the superior thoroughfare. He *766 stopped in the left lane at a red light signal on Green Acres Road. Another car was stopped in the right lane. When the light changed to green, he resumed his forward motion. When he was approximately two blocks from the accident site, he first noticed the Bieszczard vehicle as it turned from the left westbound lane of Veterans onto the bridge at Transcontinental. He said he paid no further attention to this car because he expected it to stop. At the time he noticed the Bieszczard car beginning its left turn maneuver, he also saw the vehicle that had been stopped to his right at the last red light. He estimates it was about five or six car lengths behind him in the right eastbound lane. He said he was travelling at a speed between 40 and 45 miles per hour. When he was about six or seven feet from the intersection of Transcontinental Drive, he saw the Bieszczard car suddenly appear in his path. At this moment he was attempting to move from the left to the right lane. The other car moved into his path so suddenly he had no time whatsoever to react by either braking or blowing the horn. He is not definite about the exact point of impact but estimates it was in the right lane. The front of his car hit the center of the other, causing damage to the right side in the center and the back fender.
Besnard's account of the accident corroborated in all important details by Ernest Gras, was impressive because he was an independent witness. He stated he was driving eastward on Veterans Highway and had stopped for a red light at the Green Acres Road intersection. Besnard's car was stopped in the left lane. When the light changed, Besnard's car started forward at a normal pace. Gras started forward more slowly because one of his children in the back seat had fallen to the floor and he made sure she was reseated before accelerating to normal speed. As a result he was always some five or six car lengths behind the Besnard vehicle as both moved toward Transcontinental Drive. He too was travelling at a speed of between 40 and 45 miles per hour. Gras stated the Besnard car started to cut into the right lane and returned to the left lane. When Besnard had almost reached the intersection, according to Gras the Bieszczard car suddenly drove into his path. Gras slammed on his brakes and barely avoided involvement in the collision. He said he stopped within one car length of the wreckage. The discrepancy between his account and that of Besnard is that Besnard recalled passing the Gras car after leaving the Green Acres intersection, while Gras maintains that he was always behind Besnard.
Bieszczard's version of the accident differed radically. As he recalled, after crossing the bridge, he looked to his right and noticed two automobiles moving approximately side by side on Veterans Highway toward the intersection. Because they were 350 feet away, he shifted gears and attempted to cross in front of them, thinking he had sufficient time to do so. He said his car was not hit until the front end had completely traversed both lanes of Veterans Highway, thus the rear of his vehicle was hit when it had almost cleared the roadway. Bieszczard said Besnard admitted he was driving at between 55 and 60 miles per hour shortly before the collision.
The deputy from the Jefferson Parish Sheriff's Department, who conducted the ensuing investigation, stated the debris from the wreckage was in the center of the eastbound roadway, establishing that as the point of impact.
In well-reasoned written reasons for judgment, the Trial Judge discussed and analyzed the testimony of all the fact witnesses. He made it clear he accepted Besnard's version because it was supported in all essential details by Gras, the independent witness. After reviewing the evidence, we too conclude the more credible versions of the accident were those of Besnard and Gras. We find it difficult to believe that Besnard could have travelled 350 feet at any speed within the time it took Bieszczard to cross one traffic lane to the point of impact in the center of the highway, particularly *767 when he admitted he did not stop before entering the highway, but simply shifted to a lower gear. See Barrios v. Noto, supra.
Based on these findings, we conclude the accident resulted from the sole negligence of Bieszczard in attempting to cross Veterans Highway when it was unsafe to do so. Even though Besnard saw the other car before the impact, there is nothing in the record to indicate he knew or should have known it would not stop and yield before crossing the highway. It is well settled that a motorist on a right-of-way street may assume a driver approaching an intersection from a less favored street, regulated by a yield sign, will obey the law. In the absence of some indication of an imminent breach of duty by the less favored driver, the motorist having the right-of-way is not negligent for making this assumption. See Courtault v. Government Employees Insurance Co., La.App., 169 So.2d 592.
Plaintiff urges us to reverse the finding that Besnard was not guilty of any negligence which contributed to the accident. Excess speed is the alleged act of negligence. First, it is urged that Besnard and Gras were drag racing on Veterans Highway immediately before the impact, but the record does not bear this out. Plaintiff would have us visualize a drag race scene from these facts: (1), Besnard once owned a "hot rod" (which he was not driving at the time); and (2), Gras' child fell to the floor of his car near the Green Acres light. According to her father, she fell because she was clowning with the other children then in the back seat.
The second argument made with respect to Besnard's speed is that, if he were exceeding the speed limit of 40 miles per hour, this is negligence per se. Besnard estimated his speed at between 40 and 45 miles per hour. If he were driving at 45 miles per hour, it is true he was negligent in violating a safety regulation, but in order for this negligence to be actionable, it must be a proximate cause of the accident. See Cavalier v. Peerless Insurance Co. of Keene, N. H., 246 La. 336, 164 So.2d 347. We do not think Besnard could have avoided the accident while driving at either 40 or 45 miles per hour because Bieszczard drove into his path at a point in time when it would have been impossible for him to stop at either speed.
We must next determine whether an award of $9,500.00 is adequate. In written reasons, the Trial Judge, noting the award was low, gave this explanation:
"* * * The amount awarded has been been influenced by the fact Mr. Bieszczard has liability insurance of only $5,000.00, and is obviously a person of extremely limited needs (means)." (Parenthesis ours.)
Apparently the Trial Judge based his conclusion on visual observations he made during the trial because we find nothing in the record indicative of Bieszczard's financial position.
We are aware of the jurisprudence stating the defendant's ability to pay should be considered in assessing damages. See Lacroix v. Finke, La.App., 85 So.2d 65; Ory v. Bosio, La.App., 159 So. 138. In the absence of evidence to support the conclusion Bieszczard's financial means are limited, we cannot invoke this principle of law in computing quantum.
Plaintiff was severely injured in the accident. From the scene he was taken to Ochsner Hospital. His most serious injuries were multiple lacerations of the face and chest, consisting of a precardial crunch and a fracture of the sternum. The facial cuts, closed by an estimated 300 to 500 sutures, involved primarily the left side of the face, including the forehead, cheek and periorbital areas, and the right upper eyelid. They measured between 20 and 25 inches in length. He was hospitalized for eight days, and more than half that time his head was completely bandaged, creating in the youth a fear he might have lost his eyesight. *768 When he returned home, he stayed in bed for an additional five weeks. When the bandages were removed, his mother testified she had a difficult time suppressing an inclination to recoil in horror at the sight of her son. That Plaintiff was painfully aware of his grotesque deformity is apparent from the description of his reaction to his family on his return home. Both his mother and father testified that the boy became more and more withdrawn and would avoid directly facing his own parents.
When he eventually returned to school, he did not resume his pre-accident activities. Before his injuries, he had been socially active and had engaged in sports. After, he became withdrawn and introverted, shunning former friends and dropping once enjoyed recreational activities.
Six months after the accident, Plaintiff submitted to a second operation, performed in an attempt to repair the extensive scar damage. While there may have been some improvement, photographs taken after the second operation clearly establish the youth will be permanently disfigured. In one profile shot, there appears to be a deeply etched "H" on the left side of his face with the top of the vertical lines beginning at the temple, continuing along the side of his face and ending below his cheek. The horizontal line of the "H" connects with the vertical lines at eye level. In addition, the left cheek is deeply pitted by scars, which individually would have a distracting cosmetic effect. Plaintiff's facial disfigurement has produced serious emotional problems, more significant in his case because he was an adolescent when the accident occurred. Dr. Duncan McKee, the treating plastic surgeon, considers it common knowledge by both psychiatrists and plastic surgeons that "* * * there is a strong relation between emotional disturbances and facial disfigurement."
The magnitude of the physical and mental scarring suffered by Plaintiff dwarf his other complaints, also serious. The record establishes he has intermittent chest pains which generally follow any attempt to perform strenuous physical activities. He has also complained of recurrent headaches. Although the record shows no organic cause therefor, Dr. Charles Rodney Smith, a psychiatrist, testified it was not uncommon for accident victims who had suffered head injuries to subsequently complain of headaches. These, he explained, while psychological in origin, cause the victim to experience real pain.
We believe an award of $35,000.00 is adequate to compensate Plaintiff for these injuries, insofar as money may do so. In reaching this figure we have reviewed recent cases on quantum, particularly Spizer v. Dixie Brewing Co., La.App., 210 So.2d 528, and Billings v. Travelers Indemnity Company, La.App., 173 So.2d 354.
For the reasons assigned, the judgment appealed from is amended to increase the award in favor of William V. McCrossen and against Defendants, Michael J. Bieszczard and Globe Indemnity Company, from $9,500.00 to $35,000.00. In all other respects, the judgment appealed from is affirmed. Defendants, Michael J. Bieszczard and Globe Indemnity Company, are to pay all costs of this appeal.
Amended and, as amended, affirmed.

ON REHEARING AND ON MOTION TO DISMISS
Before SAMUEL, CHASEZ and BARNETTE, JJ.
SAMUEL, Judge.
We granted a rehearing limited to these issues:
1. Should Globe Indemnity Company's motion to dismiss have been granted?
2. If Globe (hereinafter referred to as the insurer) is properly before this court, to what extent is it liable for legal interest on the award granted by this court?
*769 In our original opinion we inadvertently failed to discuss and decide the motion to dismiss. The insurer contended it was not properly before this court because it had tendered payment of the full amount for which it was cast in the trial court. Correspondence between the insurer's attorney and plaintiff's attorney indicates payment was discussed and a draft tendered; however, questions as to the form of both the release and the accompanying draft, raised by plaintiff's attorney, were not resolved. The record fails to reflect the draft was ever accepted with the specific agreement it would constitute full payment of that part of the judgment for which Globe was liable. In the absence of such an agreement between the parties, it was simply a conditional payment, was not a valid tender and could only have constituted such a tender had it been negotiated by plaintiff. See Seliga v. American Mutual Liability Insurance Company, La.App., 174 So.2d 878.
The other question before us is the insurer's liability for legal interest on the judgment. It is not disputed the insurer is liable for legal interest from judicial demand until paid on $5,000, its policy limits. However, the trial court judgment exceeded the policy limits by $4,500 and this court awarded a far greater amount over policy limits.
The insurer's liability for interest on the excess stems from an agreement in the insurance contract to pay:
"All expenses incurred * * * and all interest on the entire amount of any judgment therein which accrues after the entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability herein."
Plaintiff argues this binds the insurer to pay legal interest on the $30,000 excess judgment awarded by this court to be computed from June 20, 1968, the date the trial court rendered judgment, until paid. They reason the judgment of this court relates back to that date because, by amending the award of the lower court, we conclude the quantum we set should have been awarded by the trial court on June 20, 1968. The insurer maintains that pending a final judgment by this court it is liable only for legal interest on the excess judgment awarded by the trial court.
Plaintiff cites Doty v. Central Mutual Insurance Company, La.App., 186 So.2d 328 to support their position. In that case an insurer was held liable for legal interest on a $15,000 excess judgment from the date of rendition of the trial court judgment, based on a policy provision identical to the one above quoted. However, in that case the award of the trial court was affirmed and not increased on appeal.
We fully concur with the result reached in Doty and subscribe to the court's construction of the intent of this policy provision. At page 336 thereof the court reasoned: "* * * the intended purpose was merely to pay for interest for which the insured person would otherwise be liable, where (following the judgment) that person's liability for subsequent interest is occasioned by the insurer's unilateral determination to appeal subsequent to the judgment, within the company's sole control under pertinent policy provisions."
In this case the insurer neither appealed nor answered the appeal, thus we cannot conclude it in any way exposed its insured to greater liability for payment of legal interest on an increased excess judgment.
For the reasons assigned, the motion to dismiss the appeal is denied, our original decree is recalled and the judgment appealed from is amended: (1) to increase the award in favor of William V. McCrossen and against the defendants, Michael J. Bieszczard and Globe Indemnity Company, from $9,500 to $35,000; (2) to require the defendant, Globe Indemnity Company, to pay legal interest from date of judicial demand until paid on $5,000 and, in addition, to pay legal interest on *770 $4,500 from June 20, 1968 until paid and legal interest on $25,500 from the date of the entry of this judgment until paid; and (3) to require the defendant, Michael J. Bieszczard, to pay legal interest from date of judicial demand until paid on $35,000, which obligation to pay interest shall be in solido with the other defendant, Globe Indemnity Company, to the extent of that defendant's obligation to pay interest under this decree. As thus amended, and in every other respect, the judgment appealed from is affirmed; defendants, Michael J. Bieszczard and Globe Indemnity Company, to pay all costs of this appeal.
Amended and affirmed; motion to dismiss denied.